OPINION
{¶ 1} Defendant-appellant Jesse Smith, Jr. appeals from his conviction of operating a motor vehicle while under the influence, which was entered after a jury trial in County Court No. 5 in Canfield. On appeal, appellant alleges a lack of personal jurisdiction, prosecutorial misconduct, ineffective assistance of counsel, improper admission of his refusal to take a chemical test, insufficient evidence of impairment and a coercive jury instruction on continuation of deliberations. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On June 29, 2005, appellant was arrested for operating a motor vehicle while under the influence of alcohol (OVI) and ticketed for speeding in Beaver Township. The OVI case was tried before a jury on September 20, 2005. Officer Arquilla testified that he was driving south on Route 7 at 11:29 p.m., when he noticed appellant's pickup truck approaching him fast. He used his radar to clock the vehicle going seventy miles per hour both in the initial fifty-five mile-per-hour zone and in the subsequent forty-five mile-per-hour zone the truck entered. (T5. 46, 48, 50). The officer proceeded to make a traffic stop, and appellant pulled into a development where he lived.
 {¶ 3} Upon approaching the vehicle, the officer asked for license, registration and proof of insurance. (Tr. 56). At that point, appellant revealed that he had a permit to carry a firearm. The officer testified that it is policy to retrieve the weapon and secure it before proceeding with the traffic stop. (Tr. 57). Thus, the officer removed it from appellant's pocket and placed it in the cruiser's trunk. (Tr. 58). The officer then returned to appellant and reiterated the need for his license, registration and proof of insurance, which appellant produced after some time searching. (Tr. 58-59).
 {¶ 4} At this point, the officer noticed the smell of an alcoholic beverage and believed that appellant's speech was not quite right. The officer thus asked appellant if he had been drinking to which appellant responded that he had "a few" to drink. (Tr. 60). Accordingly, the officer asked appellant to step out of the vehicle for field sobriety testing. Appellant walked as if handicapped, and upon inquiry, he advised the officer *Page 3 
that he had two metal hips and a leg brace. (Tr. 62-64). Thus, the officer refrained from employing the walk-and-turn and the one-leg stand tests.
 {¶ 5} The remaining standard field sobriety test was the horizontal gaze nystagmus (HGN). Before administration of this test, appellant stated that he had no problems with his eyes. (Tr. 65). At this point, the officer noticed a strong odor of alcohol from appellant's mouth. (Tr. 67). From the results of the HGN test, the officer concluded that appellant was impaired and arrested him. (Tr. 68-69). Appellant's demeanor then became very agitated. He repeatedly warned that the officer had "screwed with the wrong person" and that he would make sure the officer "paid." (Tr. 70). The officer attributed the statements to the alcohol. (Tr. 73).
 {¶ 6} Appellant stated that he wanted to speak to an attorney. (Tr. 85). A telephone and telephone book were placed near appellant for his use. He never utilized either and kept acting belligerent; thus, after the twenty-minute observation period, the officer proceeded to review the refusal form and offer the chemical test. (Tr. 86). The officer testified that he read the breath test form to appellant as appellant followed along. (Tr. 69, 81-82). In fact, this was done after the officer instructed a reserve officer to retrieve appellant's glasses from his house; his wife was also permitted to retrieve the vehicle so as not to incur a towing bill. Appellant refused the test twice. (Tr. 89). The officer concluded that in his opinion, appellant was under the influence of alcohol. (Tr. 98-99).
 {¶ 7} The defense presented the testimony of a witness who testified that he was with appellant all day and night. He stated that appellant had only two beers that day, one beer with dinner around 6:30 p.m. and one when he began to play pool. (Tr. 131). This witness revealed that he himself had three mixed drinks but that he vigilantly watched appellant to ensure that he did not drink more than two or three drinks, alluding to apellant's drinking problem. (Tr. 141-142). This witness's girlfriend confirmed this testimony, but she contradicted him by stating that her boyfriend drank three Michelob Lights, rather than mixed drinks. (Tr. 147-154).
 {¶ 8} Appellant also testified. He noted his various physical ailments and the untreated pain he suffers as a result. He testified that he experienced an eye injury "early this summer" which required the removal of a piece of metal and the buffing of *Page 4 
his eye. (Tr. 160). He said this caused extreme sensitivity to light. (Tr. 161). He admitted that he initially told the officer that he had no eye problems. However, he claimed that once the light was shined in his bad eye, he flinched and remembered to tell the officer about his eye injury. (Tr. 162). He also stated that he drinks coffee all day and night. (Tr. 171).
 {¶ 9} Appellant did not dispute that he was traveling at seventy miles per hour but opined that he slowed down before reaching the forty-five mile-per-hour zone. (Tr. 173-174). He also testified that four or five years ago, he went to rehabilitation and then intensive outpatient care because his family believed he was an alcoholic. He said he had a problem with bourbon but was not actually an alcoholic. (Tr. 186-187). He insisted that he had only two beers, one with dinner and one at 9:00 or 9:30 p.m. (Tr. 191). He also claimed that the Nexium he takes can cause an odor of alcohol and can affect a breath test. (Tr. 196, 218).
 {¶ 10} The jury initially advised that they were unable to reach a decision. The court gave further instructions and asked the jury to return to their deliberations. Thereafter, the jury returned a guilty verdict. (Appellant then pled no contest to speeding.) On November 18, 2005, the court sentenced appellant on the OVI to one hundred eighty days in jail with one hundred seventy days suspended. Of the ten remaining days, appellant could spend three days in a program and was to serve the other seven days in jail. He was also fined $550, and his license was suspended for twelve months. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 11} Appellant sets forth five assignments of error, the first of which alleges:
 {¶ 12} "THE TRIAL COURT ERRED IN FAILING TO DISMISS THE PROSECUTION, AS IT HAD NO PERSONAL JURISDICTION OVER THE APPELLANT."
 {¶ 13} During trial, there was some cryptic testimony and questioning concerning the traffic tickets, their numbers and the fact that the pink (or defendant's) copy was on the prosecutor's counsel table. Defense counsel then asked to dismiss based upon an alleged failure to personally serve appellant with a copy of the traffic *Page 5 
ticket. The court overruled the motion. Appellant claims this was error and cites the following portions of Traf.R. 3:
 {¶ 14} "(C) Use of ticket [:] The Ohio Uniform Traffic Ticket shall be used in all moving traffic cases * * * Any ticket properly issued to a law enforcement officer shall be accepted for filing and disposition in any court having jurisdiction over the offense alleged. * * * An officer who completes a ticket at the scene of an alleged offense shall not be required to rewrite or type a new complaint as a condition of filing the ticket, unless the original complaint is illegible or does not state an offense. If a new complaint is executed, a copy shall be served upon defendant as soon as possible."
 {¶ 15} "(E) Duty of law enforcement officer[:] A law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon defendant, and, without unnecessary delay, file the court copy with the court. * *
 {¶ 16} Appellant concludes that the court lacks personal jurisdiction over him if the traffic ticket was not served upon him. He then cites Traf.R. 11 (B) as follows:
 {¶ 17} "(1) The following defenses and objections must be raised before plea:
 {¶ 18} "(a) Defenses and objections based on defects in the institution of the prosecution;
 {¶ 19} "(b) Defenses and objections based on defects in the complaint other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding."
 {¶ 20} From Traf.R. 11(B)(1)(b), he concludes that personal jurisdiction can be raised mid-trial. However, the lack of personal jurisdiction as alleged by appellant is a defense based upon a defect in the institution of the prosecution. Such defense must be raised before the plea at the arraignment. Traf.R. 11 (B)(1)(a).
 {¶ 21} It has long been held that personal jurisdiction, as opposed to subject matter jurisdiction, can be waived. See Fox v. Eaton Corp. (1976), 48 Ohio St.2d 236 (parties cannot confer subject matter jurisdiction on court). In fact, personal jurisdiction is not merely waived by failing to raise it at the first general appearance, but it is actually acquired by or conferred upon the court through the voluntary *Page 6 
appearance and submission of the defendant or his legal representative. See Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156.
 {¶ 22} More specifically to this case, it is well-established that a defendant who appears before the court and enters a not guilty plea at arraignment waives any issues of personal jurisdiction due to a police officer's failure to serve the ticket upon the defendant. See, e.g.,State v. Cook, 4th Dist. No. 05CA39, 2006-Ohio-1953, ¶ 7-8;Cleveland v. Fitos, 8th Dist. No. 81404, 2003-Ohio-33, ¶ 11; City ofParma v. King, (Apr. 20, 2000), 8th Dist. No. 75185; State v. Jones
(1991), 76 Ohio App.3d 604, 606 (10th Dist.); City of Brunswick v.McDonald (July 6, 1983), 9th Dist. No. 1223; State v. Savage (1977), 60 Ohio App.2d 394, 395 (9th Dist.).
 {¶ 23} Even the case cited by appellant agrees with this holding.Columbus v. Ford, 10th Dist. No. 04AP-260, 2004-Ohio-5715, ¶ 7-8 (but finding no waiver where the defendant raised the defense before pleading not guilty). Here, appellant did not raise the allegedly defective service of the ticket and any lack of personal jurisdiction until mid-trial, long after he pled not guilty at his initial appearance. As such, he conferred personal jurisdiction on the trial court and thus waived the issue herein. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 24} Appellant's second assignment of error provides:
 {¶ 25} "APPELLANT'S CONVICTION AND SENTENCE IS IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS BECAUSE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL COMMITTED A SERIES OF ERRORS THAT INDIVIDUALLY AND COLLECTIVELY DEPRIVED APPELLANT OF A FAIR TRIAL * * *."
 {¶ 26} Appellant sets forth a great multitude of allegations of ineffective assistance of counsel. There is a two-prong test to determine if counsel was ineffective. Strickland v. Washington (1984),466 U.S. 668, 686; State v. Reynolds (1998), 80 Ohio St.3d 670, 674. The first prong requires the defendant to show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. Strickland, 466 U.S. at 687; State v. Sallie (1998),81 Ohio St.3d 673, 674. The second prong requires the defendant to show that counsel's error was *Page 7 
so serious that it deprived the defendant of a fair trial, i.e. there is a reasonable probability that the error was outcome-determinative. Id. Judicial scrutiny of counsel's conduct is highly deferential and presumes that counsel's conduct falls within the wide range of reasonable professional assistance. State v. Carter (1995),72 Ohio St.3d 545, 558. Appellant's arguments hereunder generally fall into two categories: failure to seek suppression and failure to object.
 FAILURE TO SEEK SUPPRESSION {¶ 27} Appellant points to three separate pieces of evidence which he claims counsel should have sought to suppress: (1) his admission that he had been drinking; (2) the results of the HGN test; and, (3) his refusal to take the breath test. We shall address these issues separately as different law applies to each. First, we address appellant's contention that counsel should have filed a pretrial motion to suppress his statement that he had been drinking. Specifically, he claims that he was subjected to a custodial interrogation because he was not free to go and thus Miranda warnings were required before asking him if he had anything to drink.
 {¶ 28} A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In interpreting this right, it has been held that the state may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination. Miranda v. Arizona
(1966), 384 U.S. 436. The well-known Miranda warnings were thus created. See id.
 {¶ 29} However, the requirement of a Miranda rights warning is only triggered by a custodial interrogation. State v. Mason (1998),82 Ohio St.3d 144, 153, citing Berkemer v. McCarty (1984), 468 U.S. 420. The mere exercise of police investigative duties does not equate with custody. For instance, in Mason, the Ohio Supreme Court determined that an interview of a suspect at a police station does not per se triggerMiranda even when the suspect was driven there in a patrol car. Id.
 {¶ 30} To determine whether a custodial interrogation occurred, one must ask how a reasonable person in the defendant's position would understand the situation. Id. at 154, citing McCarty, 468 U.S. at 442. The decisive issue in evaluating the need *Page 8 
for Miranda rights is whether there was a formal arrest or a restraint on the freedom of movement to a degree associated with a formal arrest. Id., citing California v. Beheler (1983), 463 U.S. 1121, 1125, andOregon v. Mathiason (1977), 429 U.S. 492, 495. The requirement ofMiranda warnings is not dependent on the severity of the offense.McCarty, 468 U.S. at 440.
 {¶ 31} However, Miranda does not apply to Terry detentions. Id. ATerry stop is not an arrest requiring probable cause; rather, it is an investigative seizure made with mere reasonable suspicion of criminal activity. Terry v. Ohio (1968), 392 U.S. 1. Besides noting the generalTerry stop exception to Miranda, the McCarty Court also carved out a specific traffic stop exception to Miranda. McCarty, 468 U.S. at 440.
 {¶ 32} According to the McCarty Court, the traffic stop exception toMiranda is constitutionally valid because a traffic stop is temporary, brief, public and substantially less police-dominated than the type of interrogation at issue in Miranda itself, especially where only one officer is present. McCarty, 468 U.S. at 437-439. The Court stated that although a traffic stop curtails freedom of movement by the detainee and imposes some pressure to answer questions, the pressure does not sufficiently impair the privilege against self-incrimination to warrant a Miranda warning. Id. at 421.
 {¶ 33} Consequently, the officer can ask the detained motorist a moderate number of questions in an attempt to obtain information confirming or dispelling the officer's suspicions. Id. at 439. TheMcCarty Court concluded that the roadside questioning of a motorist detained pursuant to a routine traffic stop is not a custodial interrogation. Id. at 421. Thus, the officer in that case was permitted to ask the detained motorist if he had been drinking without providingMiranda warnings, even where the motorist was not free to go until the officer finished his traffic investigation. Id.
 {¶ 34} Contrary to appellant's assertion, a recent Ohio Supreme Court case does not stand for some broad proposition that if a traffic stop triggers an investigation for another traffic offense, thenMiranda is required before investigating the new suspicions. SeeState v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255. The Farris case did not purport to change the holding of McCarty. Rather, theFarris Court held that subjection to certain treatment after the original traffic stop can lead to the need *Page 9 
for Miranda depending on the situation-based facts of each case. Id. at ¶ 14. The officer in Farris confiscated keys, conducted a pat down search, placed the motorist in the cruiser, disclosed that he smelled marijuana in the vehicle and advised that he was going to conduct a vehicle search for marijuana. Id. at ¶ 2-3, 14.
 {¶ 35} Here, the officer here did not "thereafter" subject appellee to custodial treatment outside the temporary detention for the traffic stop or the Terry detention for the OVI investigation. See id. at ¶ 13. The question on drinking in our case was made as part of the investigation, not after custody over and above the McCarty exception. Farris cited, applied and followed McCarty in a situation with much more custodial facts. The situation here is wholly distinguishable from that inFarris. There was no pat down, key confiscation, placement in a cruiser or threatened drug search.
 {¶ 36} Here, the McCarty situation existed. That is, the defendant was stopped for speeding, the officer noticed a smell of alcohol, and the officer asked if the defendant had been drinking. See McCarty,468 U.S. at 421. As such, appellant was not "subjected to treatment that renders him `in custody' for practical purposes * * *." See Farris,109 Ohio St.3d 519 at ¶ 13.
 {¶ 37} In fact, this court has recently distinguished theFarris case and noted the importance of the contextual setting in the facts of a particular case. State v. Coleman, 7th Dist. No. 06MA41,2007-Ohio-1573 (holding that retreat to police car is not always custody). See, also, State v. Latham (June 12, 1999), 7th Dist. No. 96BA30 (custody only after failed HGN with other basic indicators caused officer to place defendant under arrest); State v. Smail (July 9, 1997), 7th Dist. No. 95CO85 (no need to Mirandize before asking how much defendant had to drink or requiring him to perform field sobriety tests).
 {¶ 38} In Coleman, we also held: "It is clearly established that an officer making a traffic stop can generally request the defendant exit his vehicle, administer field sobriety tests and ask questions about the amount of alcohol consumed without needing to Mirandize the detainee." Id. at ¶ 22. Hence, the mere questioning of appellant about whether he had anything to drink did not implicate Miranda even where appellant had been stopped for speeding and was not free to leave until the investigation for speeding and the subsequent Terry stop investigation for driving *Page 10 
under the influence were completed. See McCarty, 468 U.S. at 421. Because appellant's statement that he had a few to drink was not subject to suppression for lack of Miranda, trial counsel did not render ineffective assistance by failing to seek suppression on this ground. Appellant's first suppression argument is without merit.
 {¶ 39} Appellant's next suppression contention is that counsel was ineffective by failing to move to suppress the HGN test. He claims that the police officer had no right to administer field sobriety tests.
 {¶ 40} However, field sobriety testing need only be supported by reasonable suspicion of impairment. State v. Wilson, 7th Dist. No. 01CA241, 2003-Ohio-1070, ¶ 17 ("[a]n officer must have reasonable suspicion, based on specific and articulable facts, to believe a person is under the influence of alcohol in order to administer field sobriety tests."). These grounds can but need not be based solely on the manner in which the person was driving. Id., citing State v. Ullom, 7th Dist. No. 01BA7, 2002-Ohio-2796, ¶ 16. The court can examine the totality of the circumstances to determine whether reasonable grounds for field sobriety testing existed. Id.
 {¶ 41} Here, appellant was speeding. He was traveling seventy miles per hour, which at first was fifteen and then became twenty-five miles over the speed limit. This is more than a nominal traffic violation. SeeState v. Criswell, 2d Dist. No. 20952, 2005-Ohio-3876, ¶ 9. Appellant did not immediately produce his paperwork. His speech was not quite right. The officer could smell the odor of an alcoholic beverage. It was 11:30 at night. Plus, appellant admitted to consuming "a few" drinks. See id. (also noting that "a few" can be considered more than "a couple").
 {¶ 42} Such facts constitute reasonable suspicion to conduct field sobriety testing. See, e.g., State v. Bunkley, 7th Dist. No. 00CA224,2004-Ohio-1162 (speeding twenty-eight miles per hour over the limit, strong smell of alcohol on breath, bloodshot eyes and admitted to being at a party); State v. Blackburn (1996), 115 Ohio App.3d 678, 681 (where this court upheld field sobriety testing in lack of license plate light case based upon time of night, strong odor of alcohol on breath, admission to drinking a few). Although a suppression motion could have been filed to contest the officer's credibility, we have no indication that the failure to do so was deficient performance. See State v.Madrigal (2000), 87 Ohio St.3d 378, 389 (trial counsel's *Page 11 
failure to file a motion to suppress does not automatically constitute ineffective assistance of counsel). Hence, this argument is overruled.
 {¶ 43} Finally, appellant makes a brief argument that counsel should have moved to suppress appellant's refusal to take the breath test based upon an alleged violation of his right to counsel. He relies on R.C.2935.20, which states:
 {¶ 44} "After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.
 {¶ 45} "Whoever violates this section shall be fined not less than twenty-five nor more than one hundred dollars or imprisoned not more than thirty days, or both."
 {¶ 46} Here, the officer stated that he gave appellant access to a telephone and a telephone book. Appellant did not dispute that the officer gave him a telephone and a telephone book and eventually released his hands from the handcuffs. (Tr. 181-183). Appellant stated that he did not need the phone or the book because he had his attorney's number in his cellular phone, which was on his belt. (Tr. 182). He claimed that he did not use his cell phone to make the call because the officer had mentioned that he "did not have to let" appellant make a call. (Tr. 183).
 {¶ 47} The officer explained that his statement dealt with the fact that he did not have to wait indefinitely for appellant to decide to make the call and noted that OVI suspects are always calling their attorneys before taking the breath test. (Tr. 231-236). He stated that when appellant failed to utilize the telephone and instead kept acting belligerent, he continued with his process which included asking appellant to take the test. (Tr. 86). The officer also testified that he did not know that appellant had a cell phone with his attorney's number in it. *Page 12 
 {¶ 48} First, the mere ability to file a suppression motion, which would rely wholly upon appellant's credibility and the officer's claimed lack of credibility, does not lead to an automatic finding of ineffective assistance where such motion was not filed. SeeMadrigal, 87 Ohio St.3d at 389. In any event, contrary to appellant's suggestions the right to communicate with an attorney upon arrest is a statutory right, not a constitutional right. Dobbins v. BMV (1996),75 Ohio St.3d 533, 537-539. As the state points out, the Dobbins Court held:
 {¶ 49} "Initially, we note that the right to counsel associated with the protection against self-incrimination contained in theFifth Amendment to the United States Constitution, or as guaranteed by theSixth Amendment, does not apply to the stage at which the officer requested the chemical test for alcohol content." Id. at 537.
 {¶ 50} "* * * We realize that the decision of whether or not to submit to a blood-alcohol content test is a difficult one to make and one that most people would prefer to make on the advice of an attorney. However, the consent mandated when a person chooses to drive on Ohio roadways is an entirely civil requirement and the criminal protections for individuals that the General Assembly created do not apply. * * * The General Assembly provided a specific statutory punishment for violations of R.C. 2935.20. If the General Assembly intended the result sought by appellant it would have so provided." Id. at 539.
 {¶ 51} In sum, appellant was provided the opportunity to call counsel, no constitutional right was at issue here, and the statute briefly cited by appellant does not provide a suppression remedy. For all of these reasons, counsel did not render ineffective assistance by failing to file a suppression motion on this ground.
 FAILURE TO OBJECT {¶ 52} First, we shall address appellant's contention that trial counsel failed to object to the trial court's taking the motion for acquittal under advisement. Crim.R. 29(A) provides:
 {¶ 53} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not *Page 13 reserve ruling on a motion for judgment of acquittal made at the closeof the state's case." (Emphasis added).
 {¶ 54} Initially, we must point out that from the portion of the transcript cited by appellant (page 127), it is not apparent that the court was taking a motion for acquittal under advisement. Rather, we are only advised that some motion had been discussed off the record. (Tr. 126-127). We also note that this discussion occurred before the state had actually even rested, leading one to believe that it may not in fact have been an acquittal motion. (Tr. 126).
 {¶ 55} Next, we note that appellant cites a case, which held that the trial court violated Crim.R. 29(A) by taking the defense's acquittal motion made at the close of the state's case under advisement. Akron v.Drake (Apr. 9, 1986), 9th Dist. No. 12102. However, that court also held that the defendant failed to object to this procedure. TheDrake Court concluded that no substantial rights were affected and any error was harmless because the defendant was not entitled to an acquittal. As will be addressed under assignment of error number four, where appellant raises sufficiency of the evidence, appellant was not entitled to an acquittal after the state's case. Thus, even assuming arguendo there was error, it could only be considered harmless.
 {¶ 56} We now turn to appellant's contentions that counsel was ineffective by failing to object to at least six alleged instances of prosecutorial misconduct. Most of appellant's allegations revolve around leading questions, which allowed the state to insert evidence that was not actually offered by a witness in the first instance.
 {¶ 57} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v.Fears (1999), 86 Ohio St.3d 329, 332. In reviewing a prosecutor's alleged misconduct, the court looks at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected substantial rights of the appellant. State v. Smith (1984), 14 Ohio St.3d 13, 14-15.
 {¶ 58} If in the context of the entire trial it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments, the comments are harmless. State v.LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121. A failure to object to alleged prosecutorial misconduct waives all but *Page 14 
plain error. Id. at ¶ 126; State v. Hanna, 95 Ohio St.3d 285,2002-Ohio-2221, ¶ 77. Counsel is not ineffective by failing to object where the failure could be attributed to tactics or strategy or where prejudice is lacking.
 {¶ 59} First, appellant notes that the officer testified that when he first approached appellant, he could not tell whether the odor of alcohol was coming from inside of the vehicle or appellant's mouth. The officer stated that he wished to determine the source of the smell. (Tr. 61). The officer then testified about appellant's disabilities and the administration of the HGN test. At this point, the prosecutor asked, "You have already detected a strong odor of alcoholic beverage coming from his mouth?" The officer responded, "Yes." (Tr. 67). Appellant claims that this is plain error. Although an objection may have been entered on form, the prosecutor could have easily amended the query to be more in question from such as, "Did you detect an odor of alcoholic beverage coming from his mouth?" and "How would you rate that odor?" Reversible prejudice is thus lacking.
 {¶ 60} Second, appellant states that the prosecutor offered his own opinion in closing arguments that the HGN test only tests for alcohol and not for Nexium. (Tr. 246). We note that the statement as to Nexium was merely made in response to appellant's unsupported claim that Nexium makes his breath smell like alcohol and can affect a breath test. (Tr. 196, 218). The remainder of the prosecutor's statement on this matter was a non-prejudicial summary of the officer's testimony that the HGN tests for alcohol impairment. (Tr. 64).
 {¶ 61} Third, appellant contends that the prosecutor improperly referred to appellant's refusal to take the breath test as evidence of guilt. In fact, in the portion of closing arguments cited by appellant, the state merely noted that they did not have to prove how much appellant drank or even that he would have tested over the limit. (Tr. 252-253). The admissibility of appellant's refusal is discussed where raised in assignment of error number three.
 {¶ 62} Fourth, appellant claims that the prosecutor improperly commented on appellant's choice to exercise his right to counsel by asking in closing, "Do you need a lawyer to tell you what that [the refusal form] just said?" This was a response to *Page 15 
appellant's claim that there was a lot that he did not understand on the form because he is not an attorney. (Tr. 227).
 {¶ 63} Fifth, appellant argues that the prosecutor improperly used appellant's prior drinking problem in closing arguments to suggest that he still had a drinking problem. (Tr. 267-268). Appellant himself testified to his prior drinking problem. Appellant also presented testimony of a witness who basically stated that appellant still has a drinking problem and that is why he "watches" appellant when they are out and tries to ensure he only has two or three drinks.
 {¶ 64} Lastly, appellant complains that the prosecutor lessened its burden by offering the opinion of the arresting officer as to appellant's intoxication. Although the entire point of the trial was to prove that appellant was impaired, he believes that the arresting officer cannot opine that the person he arrested was intoxicated. The Supreme Court has specifically stated that "virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 12, citing State v. McKee (2001), 91 Ohio St.3d 292, 296, andColumbus v. Mullins (1954), 162 Ohio St. 419, 421. Such lay testimony can be crucial in prosecuting OVI cases and is relevant and admissible pursuant to Evid.R. 401 and 402. Id. This argument is wholly without merit.
 {¶ 65} In conclusion, the above arguments set forth by appellant neither individually or collectively establish that his substantial rights were violated and that his defense was unfairly prejudiced. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 66} Appellant's third assignment of error provides:
 {¶ 67} "THE CONDUCT OF THE STATE IMPERMISSIBLY LESSENED ITS BURDEN OF PROOF AND DENIED APPELLANT LIBERTIES SECURED BY [THE CONSTITUTION]."
 {¶ 68} Appellant argues that the admission of evidence that he refused the breath test created a presumption of guilt and thus lessened the state's burden of proof. He acknowledges that the United States Supreme Court has held that admission of a defendant's refusal does not violate the Fifth Amendment privilege against self-incrimination or theFourteenth Amendment due process clause. South *Page 16 Dakota v. Neville (1983), 459 U.S. 533, 564-566. He then states that such holding does not address his due process argument that admission of his refusal lessens the government's burden. He adds that the trial court's instruction reinforced the problem. (Tr. 277). The instruction charged that if the jury believed appellant refused the test, then they could but need not consider the refusal as evidence along with all the other facts and circumstances in deciding whether appellant was under the influence of alcohol.
 {¶ 69} Contrary to appellant's suggestion, admission of his refusal is not comparable to a suppressed test result. In the latter case, the trial court has specifically found that the test result is not permitted to be introduced to the jury due to constitutional violations. No similar justification exists in the former case. As the state points out, the Ohio Supreme Court has declared:
 {¶ 70} "It is, of course, permissible for a trial judge to instruct a jury that the defendant's refusal to submit to a chemical test is evidence of his or her intoxication at the time of the taking of the test." Maumee v. Anistik (1994), 69 Ohio St.3d 339, 343.
 {¶ 71} The Court specifically and unanimously approved the jury instruction used by the trial court here. Id. at 344, citing 4 Ohio Jury Instructions (1993) 405, Section 545.25(10). Refusal is merely one piece of evidence the jury can consider in determining intoxication; it does not lessen the state's burden. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 72} Appellant's fourth assignment of error provides:
 {¶ 73} "APPELLANT WAS DENIED DUE PROCESS AND THE LIBERTIES SECURED BY [THE CONSTITUTION] WHEN HE WAS CONVICTED OF THE OFFENSE OF OVI UPON INSUFFICIENT EVIDENCE."
 {¶ 74} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. Thus, an appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency of the evidence *Page 17 
claim. State v. Carter (1995), 72 Ohio St.3d 545, 553; State v.Mayas (Dec. 6, 2000), 7th Dist. No. 98JE14.
 {¶ 75} Sufficiency of the evidence is a legal test dealing with adequacy, as opposed to weight of the evidence. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, a conviction will not be reversed unless the reviewing court determines, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. State v.Goff (1998), 82 Ohio St.3d 123, 138. In other words, the evidence is sufficient if, after viewing the evidence in the light most favorable to the state, reasonable minds can reach different conclusions as to whether each element has been proven beyond a reasonable doubt.Carter, 72 Ohio St.3d at 553; State v. Bridgeman (1978),55 Ohio St.2d 261, 263.
 {¶ 76} The elements of the OVI with which appellant was charged are operating a vehicle while under the influence of alcohol. See R.C.4511.19(A)(1)(a). Under this section, the state must prove that the defendant operated a vehicle "when his faculties were appreciably impaired by the consumption of alcohol." State v. Crites (Nov. 30, 2000), 7th Dist. No. 99-518-CA. As such, the defendant's behavior is a primary consideration. Id.
 {¶ 77} Here, the defendant was speeding. Specifically, he was traveling seventy miles per hour, first in a fifty-five mile-per-hour zone, then in a forty-five mile-per-hour zone. (Tr. 46, 48, 50). This is twenty-five miles over the posted speed limit. Appellant lived near this speed drop and was well aware of the limit. He testified that he usually always slowed down for it. (Tr. 173). However, one can reasonably find that he did not on that night.
 {¶ 78} Additionally, it was 11:29 p.m., which could be considered a typical time for weekday bar-goers to be traveling home after their night out. The officer opined that appellant's speech was not quite right. (Tr. 60, 99). The officer also noticed a smell of alcohol while waiting for appellant to produce his license, registration and proof of insurance. (Tr. 60). Appellant testified that he drank two beers over a long course of time. (Tr. 165, 168). Yet, he admitted to the officer that he had "a few" *Page 18 
drinks. (Tr. 60). His breath smelled strongly of alcohol during the HGN test. (Tr. 67). His walk and balance could not be evaluated because of his physical disabilities including two metal hips and foot drop that required a leg brace. However, his HGN test results indicated he was impaired. (Tr. 64-68).
 {¶ 79} Moreover, appellant acted belligerent and made cryptic threats to the officer, which the officer attributed to the alcohol. (Tr. 70, 73). Appellant asked to speak to an attorney but did not utilize the provided telephone or telephone book; nor did he use or mention his own cellular phone attached to his belt, which allegedly had his attorney's number programmed in it. (Tr. 86-87, 182). Finally, he ended up refusing the breath test. Viewed in the light most favorable to the state, a rational person could find that the state proved appellant was under the influence of alcohol. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 80} Appellant's fifth and final assignment of error provides:
 {¶ 81} "THE TRIAL COURT DENIED APPELLANT DUE PROCESS OF LAW AND THE LIBERTIES SECURED BY [THE CONSTITUTION] WHEN IT GAVE A COERCIVE JURY INSTRUCTION."
 {¶ 82} The Supreme Court has approved the following instruction when a jury advises that they are unable to make a decision:
 {¶ 83} "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine *Page 19 
your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors." State v. Howard (1989),42 Ohio St.3d 18, 26.
 {¶ 84} Here, the trial court instructed according to theHoward charge. (Tr. 285-287). The trial court then gave what is known as the "verdict impossible" charge as follows:
 {¶ 85} "It is conceivable that after a reasonable length of time honest differences of opinion on the evidence may prevent an agreement upon a verdict. When that condition exists you may consider whether further deliberations will serve a useful purpose. If you decide that you cannot agree and that further deliberations will not serve a useful purpose you may ask to be returned to the courtroom and report that fact to the court. If there is a possibility of reaching a verdict you should continue your deliberations." 4 Ohio Jury Instructions (1992) 118, Section 415.50(4).
 {¶ 86} Appellant has no problem with the above instructions. His problem is with the court's final statement: "With that ladies and gentlemen, I ask you to please return to the jury room and continue to deliberate." (Tr. 287). Appellant believes that this final statement deprived the jury of the previously stated option of reporting back that further deliberations would not serve a useful purpose.
 {¶ 87} This argument is without merit. The court's final statement was not part of the charge. It was merely a concluding remark to release the jury so that they could go and follow the Howard charge and the "verdict impossible" charge. In order to follow such charges, the jury would have to retire to the jury room to jointly consider the new instructions and to discuss in private whether further deliberations would be useful. They could not be expected to conduct some kind of public vote from the jury box as to whether they in fact could not reach a verdict. Rather, according to the approved charges themselves, the jury is required to return to the jury room and *Page 20 
continue deliberations at least in so far as the new instructions are concerned. That is, they cannot "consider whether future deliberations will serve a useful purpose" if they do not reconvene. As such, this assignment of error is overruled.
 {¶ 88} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1