OPINION
{¶ 1} Defendant-appellant Randall Keene appeals from his conviction of operating a motor vehicle while under the influence of alcohol (OVI) that was entered in Mahoning County Court No. 3. The issues raised on appeal concern reasonable suspicion to administer field sobriety tests, administration of the field sobriety tests, probable cause to arrest, breathalyzer machine maintenance, administration of the breath test, venue and speedy trial. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On March 1, 2007, Officer Squire of the Washingtonville Police Department cited appellant for driving left of center and OVI. Appellant filed a motion to suppress on multiple grounds. At the June 26, 2008 suppression hearing, Officer Squire testified that at 6:50 p.m., he saw appellant turn east onto State Route 14 from South County Line Road in the center of Washingtonville. He disclosed that appellant made a wide right turn, drove into the westbound lane of oncoming traffic, and almost ran into an oncoming vehicle, which had to drive off the roadway in order to avoid appellant's truck. (Supp.Tr. 6-7, 10, 20).
 {¶ 3} Officer Squire testified that when he activated his lights, appellant did not immediately pull over and that they had almost reached Columbiana by the time appellant finally pulled into a driveway. Upon approaching appellant's vehicle, Officer Squire detected a strong odor of an alcoholic beverage. (Supp.Tr. 8). He asked appellant how much he had to drink, and appellant responded that he probably had too much to drink. (Supp.Tr. 9). He then attempted to administer three field sobriety tests.
 {¶ 4} The horizontal gaze nystagmus (HGN) test produced no results because appellant was squinting too much for the officer to track his eye movements. (Supp.Tr. 11-12). In performing the one-leg stand test, appellant immediately had to put his foot down for balance and spontaneously declared that he failed. (Supp.Tr. 13-14). On the walk-and-turn test, he only took four out of the required nine steps before quitting and declaring, "You got me again." (Supp.Tr. 15). *Page 3 
 {¶ 5} Officer Squire then cited appellant for driving left of center, placed him under arrest for OVI and transported him to the Beaver Township Police Department for administration of a breath test. Beaver Township Police Officer Sinkovitch, who also testified at the suppression hearing, administered the breathalyzer test and received a result of .178.
 {¶ 6} On January 3, 2008, the trial court issued its suppression decision. The court suppressed any statements that were the result of direct questioning (such as how much he had to drink) due toFifth Amendment Miranda violations but admitted any statements that were spontaneous exclamations (such as "you got me" during performance of the field sobriety tests). Regarding the Fourth Amendment, the court found reasonable suspicion, probable cause and substantial compliance with Department of Health regulations.
 {¶ 7} On April 4, 2008, appellant filed a speedy trial dismissal motion based upon the time that had passed and his belief that there had been no speedy trial waiver. The court denied this motion pointing out that there was in fact a speedy trial waiver entered at the initial appearance on March 6, 2007. The case was then tried to a jury on April 8, 2008. Appellant was found guilty as charged and was thereafter sentenced to thirty days in jail with twenty-four days suspended.
 {¶ 8} Appellant filed timely notice of appeal. He sets forth five assignments of error for our review. Regarding the first three assignments of error on suppression, our standard of review requires us to determine whether the trial court's findings are supported by competent, credible evidence. State v. Roberts, 110 Ohio St.3d 71,2006-Ohio-3665, ¶ 100. Thus, the general rule that the trial court as fact-finder is in the best position to resolve questions of fact and evaluate the credibility of witnesses is applicable to suppression hearings. State v. Mills (1992), 62 Ohio St.3d 357, 366, citingState v. Fanning (1982), 1 Ohio St.3d 19, 20. Still, we independently determine whether the trial court applied the appropriate legal standard. Roberts, 110 Ohio St.3d 71 at ¶ 100 (mixed question of law and fact).
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 9} Appellant's first assignment of error provides:
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THERE WAS REASONABLE SUSPICION TO CONTINUE TO DETAIN MR. KEENE AND REQUEST THAT HE PERFORM STANDARDIZED FIELD SOBRIETY TESTS IN *Page 4 
VIOLATION OF MR. KEENE'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 11} Appellant does not contend that the officer lacked reasonable suspicion to make the stop but argues that the officer lacked reasonable suspicion to ask him to perform field sobriety tests and thus to continue the original detention for the traffic violation. Because there was no testimony on slurred speech, bloodshot eyes or clumsiness in producing his paperwork, appellant believes there did not exist sufficient indicators of intoxication. In a mischaracterization of the evidence, he claims that the traffic violation was de minimis and that the officer did not testify that the odor of alcohol was strong.
 {¶ 12} An officer must have reasonable suspicion to believe a person is under the influence of alcohol in order to administer field sobriety tests. State v. Wilson, 7th Dist. No. 01CA241, 2003-Ohio-1070, ¶ 17. The reasonable suspicion test is met when the police officer has pointed to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention. Terry v.Ohio (1968), 392 U.S. 1, 21-22. The court can examine the totality of the circumstances to determine whether reasonable grounds for field sobriety testing existed. Wilson, 7th Dist. No. 01CA241 at ¶ 17. These grounds can, but need not, be based solely on the manner in which the person was driving. State v. Smith, 7th Dist. No. 05MA219,2007-Ohio-3182, ¶ 40, citing Wilson, 7th Dist. No. 01CA241 at ¶ 17 andState v. Ullom, 7th Dist. No. 01BA7, 2002-Ohio-2796, ¶ 16.
 {¶ 13} Here, the officer testified that in merely making a right turn from a stopped position onto State Route 14 heading east, appellant's truck crossed the center of the road, which was marked with double yellow lines. His entry into the westbound lane was so extreme that it caused the oncoming vehicle to drive off the road to avoid a collision. Thus, appellant nearly caused an accident in that there could have been a head on collision between his vehicle and the oncoming vehicle or there could have been a collision between the oncoming vehicle and an object outside the roadway. This is more than a de minimis violation and is more extreme than some other more commonly occurring traffic infractions.
 {¶ 14} Besides the traffic violation, the officer also testified that appellant did not stop at first and that they were almost at Columbiana before appellant finally pulled *Page 5 
into a driveway east of the Route 11 underpass. (Supp.Tr. 8, 22). Also notable here is the time of day, 6:50 p.m. Finally, contrary to appellant's claim, the officer did in fact testify that, upon approaching appellant, the odor of an alcoholic beverage was strong. (Supp.Tr. 8).
 {¶ 15} From all of these indicators, a person of reasonable caution would investigate further to ensure appellant was not driving under the influence of alcohol before releasing him on the left of center charge. In other words, testimony on bloodshot eyes, slurred speech and trouble finding documents are not requirements; rather, they are mere factors that can be considered. The officer related sufficient articulable facts to constitute reasonable suspicion to administer field sobriety tests.
 {¶ 16} It should also be pointed out that the officer testified that prior to asking appellant to perform field sobriety tests, he asked appellant how much he had to drink and appellant admitted that he had "too much." (Supp.Tr. 9). The state focuses on this answer in support of further reasonable suspicion, but appellant does not mention it apparently due to the fact that the trial court suppressed statements made in response to direct questioning. However, the trial court should not have suppressed this admission.
 {¶ 17} Specifically, we have established that a police officer is entitled to ask a motorist if they have been drinking when they have been pulled over as long as no additional events have occurred to create a custodial situation over and above that of a typical traffic stop.State v. Smith, 7th Dist. No. 05MA219, 2007-Ohio-3182, ¶ 33; State v.Coleman, 7th Dist. No. 06MA41, 2007-Ohio-1573, ¶ 19, appeal not accepted for review 114 Ohio St.3d 1512, 2007-Ohio-4285; State v. Smail (July 9, 1997), 7th Dist. No. 95CO85. Cf. State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, ¶ 2-3,14 (where officer took keys, patted motorist down, placed him in cruiser, and told motorist he was going to search car all before asking investigative question on smell of drugs). The fact that the motorist is not free to go until they have been cited for the traffic stop does not turn the question into a custodial interrogation.Smith, 7th Dist. No. 05MA219 at ¶ 31-33, citing Berkemer v. McCarty
(1984), 468 U.S. 420 (creating traffic stop exception toMiranda where officer had asked motorist how much he had to drink).
 {¶ 18} Since a trial court's decision can be upheld on alternate grounds, the admission can also be viewed to even further bolster a finding of reasonable suspicion here. For all of these reasons, this assignment of error is overruled. *Page 6 
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 19} Appellant's second assignment of error contends:
 {¶ 20} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THERE WAS PROBABLE CAUSE TO ARREST MR. KEENE IN VIOLATION OF MR. KEENE'SFOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE 1
SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 21} Appellant argues that there was not probable cause to arrest him for OVI because the field sobriety tests were invalid. He generally claims that the state failed to show that the field sobriety tests were administered in substantial compliance with any standards such as those of the NHTSA. He also specifically points out that there was no visual line used for the walk-and-turn test.
 {¶ 22} In determining the existence of probable cause to arrest for OVI, the court must determine whether, at the moment of arrest, the officer had information sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan (2000),89 Ohio St.3d 421, 427 (superseded by statute on other grounds as discussed below). In Homan, the Supreme Court required police to have administered field sobriety tests in strict compliance with standardized testing procedures in order for the results to serve as evidence of probable cause to arrest. Homan, 89 Ohio St.3d at ¶ 1 of syllabus. This holding was eliminated, however, when the legislature added the following provisions to the OVI statute:
 {¶ 23} "(b) * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that theofficer administered the test in substantial compliance with the testingstandards for any reliable, credible, and generally accepted fieldsobriety tests that were in effect at the time the tests wereadministered, including, but not limited to, any testing standards thenin effect that were set by the national highway traffic safetyadministration [NHTSA], all of the following apply:
 {¶ 24} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 25} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding. *Page 7 
 {¶ 26} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.
 {¶ 27} "(c) Division (D)(4)(b) of this section does not limit or preclude a court, in its determination of whether the arrest of a person was supported by probable cause or its determination of any other matter in a criminal prosecution or juvenile court proceeding of a type described in that division, from considering evidence or testimony that is not otherwise disallowed by division (D)(4)(b) of this section." R.C. 4511.19 (D)(4) (emphasis added).
 {¶ 28} First, we point out that the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where the test results should have been excluded for lack of compliance with certain standards. Homan, 89 Ohio St.3d at 427. In Homan, the Supreme Court stated that probable cause existed for the arrest where the officer observed the erratic driving, saw the driver had red, glassy eyes, smelled alcohol on the driver's breath and the driver admitted to having consumed alcohol. Id.
 {¶ 29} Here, the officer saw a major left of center violation which occurred when appellant was merely trying to make a right turn from a standstill and which nearly caused a collision. Appellant took a prolonged amount of time to pull over, eventually pulling into a driveway. Appellant smelled strongly of alcohol, and he admitted to drinking too much. Regardless of the field sobriety testing, probable cause existed for an OVI arrest.
 {¶ 30} Moreover, the field sobriety testing here did not suffer from the flaws alleged by appellant. In general, Officer Squire testified that he was trained to administer field sobriety tests at Youngstown State University's Police Academy and that he was a state certified law enforcement officer. (Supp.Tr. 5, 10). He stated that he followed a manual in conducting field sobriety testing. (Supp.Tr. 11). He expressly answered that he conducted the one-leg stand and the walk-and-turn test in accordance with his training. (Supp.Tr. 12, 15). Additionally, he described the specific procedures that he used in administering these tests and related the instructions he provided to appellant. (Supp.Tr. 13-14). *Page 8 
 {¶ 31} Appellant focuses on the fact that in cross-examination, the officer was asked what the standard NHTSA administrative procedures were, and he stated that he could not recall. (Supp.Tr. 27, 38). However, he was likely confused by defense counsel's statement that he should not repeat the instructions to which he had already testified. As aforementioned, the officer had previously testified to the standard procedures that he was taught and the corresponding instructions that he provided to appellant. In addition, there is no requirement that the officer know that the standard he uses is called NHTSA. As appellee points out, the statute states, "including, but not limited to" such NHTSA standard. R.C. 4511.19(D)(4)(b).
 {¶ 32} Contrary to appellant's next argument, the officer's answer that he could not recall the clues for the HGN test does not require suppression; the HGN test produced no results due to appellant's squinting and thus was not used against him. Contrary to appellant's further suggestion, the officer did provide examples of clues for the two tests from which observations were made. (Supp.Tr. 27, 28). Although the officer may not have been able to recall all of the available clues off the top his head, this is not fatal to the case as appellant claims. See State v. Johnson, 7th Dist. No. 05CO67, 2007-Ohio-602, ¶ 26 (clues officer did know were sufficient to show defendant was intoxicated). We note that officers typically use a checklist that lists the clues for them.
 {¶ 33} In any event, appellant did not (and does not state) how the officer's testimony on the procedures he learned and utilized here varied from the NHTSA standards. Thus, appellant did not actually shift the burden to the state or at least the state's burden was general rather than specific. See, e.g., Johnson, 7th Dist. No. 05CO67 at ¶ 9 (characterizing this as an attempt to blindside the prosecution);State v. Arnold, 7th Dist. No. 05CO60, 2006-Ohio-5228, ¶ 10-12.
 {¶ 34} "When a defendant's motion to suppress raises only general claims * * * the burden imposed on the state is fairly slight. * * * With a general motion to suppress, the state is only required to demonstrate, in general terms, that it substantially complied with the regulations. Unless the defendant raises a specific issue in a motion, specific evidence is not required." Johnson, 7th Dist. No. 05CO67 at ¶ 9, citing State v. Johnson (2000), 137 Ohio App.3d 847, 851.
 {¶ 35} The mere statement that tests were not conducted in compliance with NHTSA is not sufficient to invoke the state's burden.Arnold, 7th Dist. No. 05CO60 *Page 9 
at ¶ 12 (defendant should have alleged facts in his motion as to how officer instructed him to perform the tests and how they did not comply with standards). Since appellant had knowledge as to how he was instructed to perform the tests and since he had access to the knowledge as to how field sobriety tests should be administered, he should have specifically alleged facts to support his argument that the tests were not administered in compliance with the prescribed standards. State v.Gozdan, 7th Dist. No. 03CA792, 2004-Ohio-3209, at ¶ 8-10. See, also, Crim. R. 47 (a motion to suppress must state with particularity the grounds upon which it is made).
 {¶ 36} It was not the state's burden to guess at how appellant was claiming the field sobriety testing fell short of the standards. SeeJohnson, 7th Dist. No. 05CO67 at ¶ 27. Because appellant did not sufficiently specify his complaints at the trial level, his current arguments can be overruled without our even reaching the substantive analysis outlined above.
 {¶ 37} We note that the only exception to the specificity issue is appellant's complaint that the officer did not utilize an actual painted line for the walk-and-turn and instead used an imaginary line. Appellant elicited that the officer usually uses the line on the road for the test but that he used an imaginary line here. (Supp.Tr. 14, 28). However, appellant did not establish what the standard actually required. We again note the statute's use of "including, but not limited to [the NHTSA standard.]" R.C.4511.19(D)(4)(b).
 {¶ 38} Case law reveals that the NHTSA standard provides the term "designated line", not visible line as appellant suggests. See State v.Mahaffey, 2d Dist. No. 2003CA56, 2004-Ohio-1023, ¶ 19. Here, appellant had pulled into a driveway rather than pulling to the side of the road, and the use of the lines on State Route 14 may have been considered too dangerous. Moreover, a painted line is not always available. Some courts have interpreted the standard's use of "designated line" to allow the use of an imaginary line. See id. See, also, State v. Maguire (July 30, 2001), 5th Dist. No. 2000CA374 (officer should have given instructions that motorist was to follow imaginary straight line). As such, we conclude that the use of an imaginary line did not invalidate the walk-and turn test.
 {¶ 39} Finally and regardless, the officer here did not actually testify that appellant failed the tests. See Johnson, 7th Dist. No. 05CO67 at ¶ 25 (even if final result should be suppressed, officer's observations of motions during test are evidence *Page 10 
court can consider in probable cause evaluation and are not subject to statutory substantial compliance test). Rather, after explaining the instructions he provided to appellant, the officer told the court that appellant immediately put his foot down for balance upon attempting the one-leg stand and that appellant spontaneously admitted that he failed. (Supp.Tr. 13-14). As to the walk-and-turn, the officer informed the court that appellant did not complete the test as he quit after four steps with the comment, "You got me again." (Supp.Tr. 14-15). At trial, the officer repeated these descriptions. (Tr. 31-33).
 {¶ 40} The descriptions of appellant's actions and statements during the test were admissible regardless of whether actual field sobriety test results could have been disclosed. State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, ¶ 15 (even if actual test results are tainted, officer's description of observed movements is admissible). For all of these reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 41} Appellant's third assignment of error alleges:
 {¶ 42} "THE TRIAL COURT ERRED WHEN IT DENIED MR. KEENE'S MOTION TO SUPPRESS FOR THE REASON THAT THE STATE FAILED TO SUBSTANTIALLY COMPLY WITH VARIOUS OHIO ADMINISTRATIVE CODE SECTIONS CONCERNING THE MAINTENANCE AND USE OF THE BREATHALYZER MACHINE AND THE STATE OF OHIO FAILED TO DEMONSTRATE THAT THE ARRESTING AGENCY AND ARRESTING OFFICER COMPLIED WITH THE REGULATIONS FOR THE ADMINISTRATION OF THIS TEST SET FORTH IN THE OAC."
 {¶ 43} Appellant claims that the state failed to show substantial compliance with various Ohio Department of Health regulations concerning the administration of the breath test and the maintenance of the machine. Appellant complains that the senior operator responsible for maintaining the machine did not testify at the suppression hearing. He argued at that hearing that the testifying officer was not the custodian of records under the business records exception to the hearsay doctrine.
 {¶ 44} The state initially responds by complaining that appellant's suppression motion listed every existing regulation as being violated without any basis for each allegation as the motion was filed before discovery was conducted. The state also *Page 11 
contends that it presented sufficient evidence to show substantial compliance with the regulations.
 {¶ 45} The testimony of the officer who tested appellant's breath and the exhibits he identified disposed of the suppression motion's requests to prove that: he was a certified operator; he took the sample within two hours; he watched appellant for twenty minutes prior to testing; and he checked appellant's mouth. (Supp.Tr. 6, 32-33, 38-39, State's Exhibit 4). This officer also testified that the calibration solution is kept in the refrigerator, that a manual is kept with the machine and that a log book is kept with the machine for entry of all test results, including simulated tests. (Supp.Tr. 33, 48-49, 55). This officer also disposed of the claim in the suppression motion that the result was not expressed in terms of grams per 210 liters. (Supp.Tr. 50, State's Exhibit 4). Additionally, he explained the initial zero test as part of his procedure in analyzing a subject's breath, rather than a failed breath test as appellant's motion suggested. (Supp.Tr. 39-40).
 {¶ 46} Most of appellant's other objections are based upon his belief that the officer who performed the test should not have been able to testify to maintenance records contained in the log book kept with the breathalyzer machine. However, the Rules of Evidence do not apply to suppression hearings (except those regarding privilege). State v.Bozcar, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 17, citing Evid. R. 101(C)(1), 104(A). Thus, a court considering a motion to suppress can rely on hearsay and other evidence, even if that evidence would not be admissible at trial. State v. Edwards, 107 Ohio St.3d 169,2005-Ohio-6180, ¶ 14; Maumee v. Weisner (1999), 87 Ohio St.3d 295, 298;U.S. v. Raddatz (1980), 447 U.S. 667, 679; U.S. v. Matlock (1974),415 U.S. 164, 173-174.
 {¶ 47} As such, the officer who tested appellant's breath could properly testify to the contents of the log book at the suppression hearing to support the reliability of the breath test, regardless of whether he could be considered a custodian of records for purposes of the business records hearsay exception. This officer's testimony showed that a certified senior operator conducted the maintenance on the machine, that the RFI check and calibration tests were conducted every seven days and that the calibration solution was certified and was not expired. (Supp.Tr. 34-36, 42-43, 45-49, 50-51, 53). *Page 12 
 {¶ 48} Furthermore, the calibration certificate itself shows the solution's target value, expiration date (which is one year from manufacture), and the limits of acceptable testing. Other exhibits established that calibration testing and hand-held RFI testing were conducted in the days just prior to and just after appellant's breath test; in these exhibits the temperature of the simulator is checked as being within guidelines. It can also be seen that the two testing solutions were not used more than three months after they were opened.
 {¶ 49} Contrary to appellant's claims, the state did produce sufficient evidence to show substantial compliance with the regulations contested by appellant (especially considering that his motion argued every possible regulation notwithstanding his failure to conduct discovery to ascertain the validity of his claims). This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 50} Appellant's fourth assignment of error argues:
 {¶ 51} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DIRECTED VERDICT FOR THE STATE'S FAILURE TO ESTABLISH JURISDICTION AND VENUE."
 {¶ 52} In a brief argument, appellant claims that the offense took place in Columbiana County and that venue is not sufficiently established merely because a portion of a vehicle is said to have crossed the road's center line, which is also the county line.
 {¶ 53} Venue is not a material element of a crime but is a fact that must be proven beyond a reasonable doubt. State v. Headley (1983),6 Ohio St.3d 475, 477. Venue need not be established in express terms as long as it is demonstrated by the totality of the facts and circumstances existing in the case. Id.
 {¶ 54} Here, the officer testified that appellant's vehicle entered Mahoning County when it crossed the center line of State Route 14 by approximately half a vehicle width (causing the oncoming vehicle to leave the road by half a vehicle width). (Tr. 25-26, 63, 70). Moreover, it was established through a map exhibit from the County Engineer's Office and through testimony that the center of State Route 14 is the county line between Mahoning and Columbiana Counties. (Tr. 68); Defendant's Exhibit F. *Page 13 
 {¶ 55} Contrary to appellant's suggestion, merely because he mostly drove in Columbiana County and only briefly crossed the center (county) line does not deprive Mahoning County of jurisdiction. This very act, this very method of entering Mahoning County, was the reason for the stop. He operated his vehicle in Mahoning County, regardless of how briefly, and according to the jury verdict, he was intoxicated at such time. Thus, he could be tried in Mahoning County. See R.C. 2901.12(A) (where the offense or any element of the offense was committed). As such, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 56} Appellant's fifth and final assignment of error alleges:
 {¶ 57} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF DEFENDANT'S SPEEDY TRIAL ACT RIGHTS."
 {¶ 58} Appellant was arrested on March 1, 2007. Barring any tolling events or waivers, his try by date was ninety days from the day after his arrest. In his April 4, 2008 motion to dismiss on speedy trial grounds, appellant erroneously claimed that there was no time waiver filed in the case. As the trial court found, appellant waived his speedy trial rights and requested an indefinite continuance at his initial appearance on March 6, 2007. Such waiver was signed by appellant, his counsel and the court and was filed in the case.
 {¶ 59} Appellant now briefly acknowledges the time waiver but proposes that the tolling provided by the waiver stopped when the state requested a continuance of the suppression hearing on May 8, 2007. He provides no support for this position. There is no conceivable reason why the state's request for a continuance would eradicate a defendant's speedy trial waiver.
 {¶ 60} As the state points out, the only item that could possibly be construed as a revocation of appellant's speedy trial waiver was his April 4, 2008 dismissal motion. However, trial was held on April 8, 2008, and less than a week was on the speedy trial clock prior to the filing of his waiver.
 {¶ 61} Finally, any suggestion that the length of time is itself violative of speedy trial protections is invalid where a waiver such as this has been filed. See State v. O'Brien (1987), 34 Ohio St.3d 7, ¶ 2 of syllabus (a waiver that expressly waives the accused's right to a speedy trial under the statute without mentioning a specific time period is unlimited in duration, and the accused is not entitled to a discharge for delay *Page 14 
in bringing him to trial unless the accused files a formal written objection and demand for trial). See, also, State v. Kuriger,175 Ohio App.3d 676, 2008-Ohio-1673, ¶ 16-18. Here, the waiver expressly waived the right to a speedy trial and requested an indefinite continuance. Accordingly, appellant's speedy trial rights were not violated.
 {¶ 62} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs. *Page 1