OPINION *Page 2 
{¶ 1} The State of Ohio appeals the portion of the decision of the Mahoning County Common Pleas Court which suppressed the statement of defendant-appellee Michael Coleman that he drank a couple beers. The issue on appeal is whether the trooper's question as to how much appellee had to drink required Miranda warnings under the totality of the circumstances of this case, including the fact that appellee was in the patrol car at the time. For the following reasons, the judgment of the trial court is reversed.
 {¶ 2} The trial court relied entirely upon an outdated case, which is no longer followed by this court, the Ohio Supreme Court or the United States Supreme Court. Thus, we could not uphold the trial court's evaluation of the totality of circumstances. Moreover, under the facts of this case, the officer's question was not posed during a custodial interrogation. Specifically, the adjournment to the police cruiser after the stop for speeding lacked the requisite custodial quality based on various factors discussed below, including the unique fact here that appellee was not in physical possession of his driver's license, his vehicle registration or his proof of insurance.
 STATEMENT OF THE CASE {¶ 3} On December 31, 2004, appellee was stopped for speeding and was thereafter arrested for driving under the influence of alcohol. The offense was a fourth degree felony under R.C. 4511.19(G)(1)(d), which applied when the offender had three or more driving under the influence convictions within the previous six years.
 {¶ 4} On September 6, 2005, appellee's counsel filed a two-page suppression motion with an eighty-three page memorandum attached. Appellee proffered various grounds for suppression. For instance, he sought to suppress the results of the horizontal gaze nystagmus (HGN) test due to alleged failures in its administration. Appellee also alleged a lack of probable cause to arrest and to administer field sobriety tests. Pertinent to this appeal, appellee alleged that he was subjected to a custodial interrogation without the administration of Miranda warnings. Specifically, he *Page 3 
wished to suppress his answer to the officer's question as to how many drinks he had that night.
 {¶ 5} A suppression hearing was held on February 14, 2006, where the state presented the trooper's testimony. The trooper explained that he clocked appellee driving forty-five in a thirty-five mile per hour zone and thus stopped him for speeding. (Tr. 17, 20). Upon approaching the vehicle, he noticed a moderate smell of alcohol. (Tr. 24). Appellee could not produce his driver's license, his vehicle registration or his proof of insurance. (Tr. 23).
 {¶ 6} In order to verify his identity, the trooper asked appellee to come back to his cruiser. He obtained appellee's purported social security number to run his name through dispatch. (Tr. 24). While verifying appellant's information in the cruiser, the trooper determined that the moderate smell of alcohol previously noticed was emanating from appellant's mouth, and he observed that appellee's speech was slurred, his eyes were bloodshot and his face was red. (Tr. 25-27). Dispatch responded that appellee had eleven prior driving under the influence convictions in his lifetime. (Tr. 38). When the trooper asked appellee if he had been drinking, appellee initially responded in the negative. (Tr. 27).
 {¶ 7} The trooper decided to administer three field sobriety tests. He discovered four of the six clues on the HGN test, which established a 77% chance of having a blood alcohol content over .10, the legal limit at the time. (Tr. 31-33). Based upon the HGN test results, the trooper again asked if appellee had been drinking to which appellee admitted that he had a couple of beers at work. (Tr. 28, 34). Appellee then refused to perform the one-leg stand and the walk-and-turn field sobriety tests. (Tr. 28-29). At this point, the officer advised appellee that he was placing him under arrest. (Tr. 34). Appellee later refused the breathalyzer test. (Tr. 36).
 {¶ 8} On March 13, 2006, the trial court released its suppression decision. The trial court expressly found the trooper's testimony credible. The court then found that the trooper had probable cause to administer field sobriety tests after detecting an odor of alcohol on appellee. The court also found substantial compliance with the proper HGN testing standards. However, the court suppressed the non-Mirandized statements made by appellee as to having a couple beers. In doing so, the court *Page 4 
concluded that once the officer detected the odor of alcohol, appellee was not free to leave and was thus in custody for purposes ofMiranda. The trial court based its suppression holding on State v.Stefanick (1984), 7th Dist. No. 83C51.
 {¶ 9} The state filed timely notice of appeal certifying that the appeal was not filed for the purpose of delay and that the ruling on the suppression motion rendered the state's proof so weak in its entirety that any reasonable possibility of effective prosecution was destroyed. Crim.R. 12(K)(1) and (2). Although this court is hard pressed to give credibility to such a contention given the facts of this case and the trial court's findings relative to the propriety of the field sobriety test administered by the arresting officer, we cannot debate the propriety of the state's certification. See State v. Bertram (1997),80 Ohio St.3d 281, 285; R.C. 2945.67(A). We feel compelled to point out that the indiscriminate use of such a tactic by the prosecutor's office can have dire consequences in the event an appellate court affirms a trial court's suppression of evidence order. That is, the state would be prohibited from prosecuting the defendant on the remaining evidence, no matter how strong that evidence might be. Crim.R. 12(K). The only exception is if the state produces newly discovered evidence that in the exercise of reasonable diligence could not have been discovered before filing the appeal. Id.
 {¶ 10} Next, we note that appellee attempted to cross-appeal from the portion of the trial court's decision upholding the field sobriety test and the arrest. However, on May 1, 2006, this court dismissed the cross-appeal, stating that a trial court's suppression order was not final for purposes of a defendant's appeal. The state filed its merit brief in May 2006. Appellee filed his response in November 2006.
 ASSIGNMENT OF ERROR {¶ 11} The state's assignment of error and accompanying issue presented provide:
 {¶ 12} "COMPETENT AND CREDIBLE EVIDENCE DOES NOT SUPPORT THE TRIAL COURT'S GRANT OF DEFENDANT-APPELLEE'S MOTION TO SUPPRESS, AND THE TRIAL COURT ERRED IN GRANTING THE SAME."
 {¶ 13} "UNDER OHIO LAW, SIMPLY REQUIRING DEFENDANT TO SIT IN A POLICE CAR FOR A SHORT PERIOD OF TIME TO ANSWER A FEW QUESTIONS *Page 5 
DOES NOT ELEVATE THE SITUATION BEYOND THE REALM OF THE ORDINARY TRAFFIC STOP AND, THEREBY, DOES NOT IMPLICATE MIRANDA OR REQUIRE THAT AN OFFICER READ A SUSPECT HIS MIRANDA RIGHTS. YET THE TRIAL COURT SUPPRESSED COLEMAN'S UNMIRANDIZED STATEMENTS GIVEN NOT IN CUSTODY. MUST THIS COURT UPHOLD THE TRIAL COURTS GRANT OF COLEMAN'S MOTION TO SUPPRESS?"
 {¶ 14} The state contends that the trooper was not conducting a custodial interrogation for purposes of Miranda. The state argues that appellee was already properly stopped for speeding and as part of aTerry seizure to investigate a smell of alcohol, a police officer can ask a driver if he has been drinking without Mirandizing him. The state notes that it was a cold night on the last day of December and appellee failed to produce any of the three items required upon being validly stopped for speeding. Thus, the state concludes that asking if appellee would step back to the cruiser did not make the encounter more custodial than an ordinary traffic stop or Terry seizure.
 LAW ANALYSIS {¶ 15} A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In interpreting this right, it has been held that the state may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination. Miranda v. Arizona
(1966), 384 U.S. 436. The well-known Miranda warnings were thus created. Id.
 {¶ 16} However, the requirement of a Miranda rights warning is only triggered by a custodial interrogation. State v. Mason (1998),82 Ohio St.3d 144, 153, citing Berkemer v. McCarty (1984), 468 U.S. 420. The mere exercise of police investigative duties does not equate with custody. For instance, in Mason, the Ohio Supreme Court determined that an interview of a suspect at a police station does not per se triggerMiranda even when the suspect was driven there in a patrol car.
 {¶ 17} To determine whether a custodial interrogation occurred, one must ask how a reasonable person in the defendant's position would understand the situation. *Page 6 
Id. at 154, citing McCarty, 468 U.S. at 442. If there was not a formal arrest, then to establish custody there must be a restraint on the freedom of movement to a degree associated with a formal arrest. See, e.g., California v. Beheler (1983), 463 U.S. 1121, 1125, and Oregon v.Mathiason (1977), 429 U.S. 492, 495.
 {¶ 18} The McCarty Court stated the requirement of Miranda warnings is not dependent regardless of the severity of the offense.McCarty, 468 U.S. at 440. However, they recognized that Miranda does not apply to Terry detentions. Id. A Terry stop is not an arrest requiring probable cause; rather, it is an investigative seizure made with mere reasonable suspicion of criminal activity. Terry v. Ohio (1968),392 U.S. 1. The Court then carved out a traffic stop exception toMiranda as well. McCarty, 468 U.S. at 440.
 {¶ 19} According to the McCarty Court, the traffic stop (analogous to the Terry stop) exception to Miranda is constitutionally valid because a traffic stop is temporary, brief, public and substantially less police-dominated than the type of interrogation at issue inMiranda itself, especially where only one officer is present. Id. at 437-439. The Court stated that although a traffic stop curtails freedom of movement by the detainee and imposes some pressure to answer questions, the pressure does not sufficiently impair the privilege against self-incrimination to warrant a Miranda warning. Id. at 436-437. Thus, the Court determined that an officer making a traffic stop can "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Id. at 439.
 {¶ 20} Although the Court held it is possible that a motorist who has been detained pursuant to a traffic stop can thereafter be subjected to treatment that renders him "in custody" for practical purposes, the Court concluded that the roadside questioning of a motorist detained pursuant to a routine traffic stop is not a custodial interrogation. Id. at 440-441. The Court also explicitly held that the officer can ask the detained motorist if he had been drinking without providingMiranda warnings even though the motorist was not yet free to go. Id. (officer also performed field sobriety testing). Hence, the mere questioning appellee about whether he had anything to drink did not implicate Miranda even where appellee had been stopped for speeding *Page 7 
and was not free to leave until the investigation for speeding and the subsequent investigation for driving under the influence were completed. See id.
 {¶ 21} Thus, the trial court erroneously relied on a case cited by the defense for the proposition that the mere activation of overhead pursuit lights constitutes custody for purposes of Miranda. See State v.Stefanick (1984), 7th Dist. No. 83C51. Based upon McCarty, this court has since pointed out that Miranda is not triggered merely because an officer questions a stopped motorist in order to investigate suspicions of driving under the influence. State v. Latham (June 12, 1999), 7th Dist. No. 96BA30. In fact, this court has stated that Miranda is not required merely because the officer questions the number of drinks consumed by an individual suspected of driving under the influence.State v. Smail (July 9, 1997), 7th Dist. No. 95CO85 (no need toMirandize before asking how much defendant had to drink or requiring him to perform field sobriety tests). Contrary to the defense's contention at oral argument, these were not Fourth Amendment as opposed toFifth Amendment cases. Rather, both specifically dealt with Miranda. Because the law relied upon by the trial court was incorrect concerning the point of custody, the defense cannot argue that we should defer to the trial court's suppression decision on whether appellee was in custody.
 {¶ 22} It is clearly established that an officer making a traffic stop can generally request the defendant exit his vehicle, administer field sobriety tests and ask questions about the amount of alcohol consumed without needing to Mirandize the detainee. The extra fact we have in this case is the location of appellee in the police cruiser while being asked if he consumed alcohol. The question becomes whether the officer's act of requesting that appellee come back to the cruiser in order to runhis name through the system escalated the situation to more than an ordinary traffic stop or Terry investigation. We find that it does not under the unique facts that exist here.
 {¶ 23} Initially, we acknowledge that the McCarty Court found that under the facts of that case the defendant had not been arrested for purposes of Miranda until he was placed in the patrol car. However, inMcCarty, the investigation had been completed and the mere stop turned to a formal arrest when the officer placed the defendant in his car in order to transport him. Whereas, in the case before us, the investigation was just starting at the point appellee was asked to join the officer in the *Page 8 
cruiser. It is well-established that the point of custody is situation-based. Beheler, 463 U.S. 1121. As will be seen in the Ohio Supreme Court's recent Farris case reviewed below, the Court's suppression mandate in that case was the result of a multitude of situation-based custodial factors that occurred and did not merely rely on the fact that the defendant adjourned to the police cruiser to support its decision. State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255.
 {¶ 24} In Latham, this court noted that custody did not occur at the time the defendant was placed in the cruiser for administration of the HGN test. Latham, 7th Dist. No. 96BA30. Other appellate districts have concluded that simply requiring the defendant to sit in a police car for a short period of time to answer a few questions does not elevate the situation beyond the realm of the ordinary traffic stop approved inMcCarty and into the realm of a formal arrest or its equivalent. See, e.g., State v. Johnson (May 1, 2000), 12th Dist. No. CA99-06-061;State v. Warrell (1987), 41 Ohio App.3d 286, 287 (Ninth District stated that a motorist questioned at an accident scene can reasonably expect that he will be requested to answer some questions and have his license and registration checked in order to complete an accident report). In fact, this court favorably cited the Warrell ruling in ourSmail case cited above.
 {¶ 25} Although not a case on point as the issue was suppression of cocaine found in a pat-down, the Ohio Supreme Court has found that an officer is permitted to routinely place a stopped motorist in his car.State v. Lozardo (2001), 92 Ohio St.3d 74, 76 (concluding, however, that the officer cannot pat the motorist down without more reason for placement in the car than routine). The Lozardo Court noted that numerous courts have held that an officer may ask a driver to sit in his or her patrol car to facilitate the traffic stop. Id. The Supreme Court cited the Warrell case (which we cited supra) and the Carlson case (which we cite infra) and distinguished its case based upon the fact that weapon searches were not performed in those two appellate cases. Id. In fact, the Court opined that the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop is relatively minimal. Id. (finding the level of intrusion on the driver dramatically increased when the driver is subject to a pat-down search for weapons before entering the patrol car). *Page 9 
 {¶ 26} As aforementioned, whether a custodial interrogation for purposes of Miranda took place in any given case depends on the circumstances existing therein. For instance, the time of night, type of traffic, weather and crime rate in the area are said to be relevant considerations. "It is certainly not unusual for persons who are stopped for traffic violations on major highways to be asked to sit inside a police cruiser while a citation is issued particularly at night time".State v. Harris (Nov. 3, 1992), 2d Dist. No. 13279. Another consideration is said to be whether the defendant was detained in the front or back seat of the patrol car. See, e.g., State v. Prunchak, 9th Dist. No. 04CA70-M, 2005-Ohio-869, ¶ 28 (not custody to place in front seat of patrol car and drive to a flat surface for field sobriety testing); State v. Carlson (1995), 102 Ohio App.3d 585, 596 (police officer may ask relevant questions to a motorist detained pursuant to a routine traffic stop in the front seat of the patrol car as a brief procedure to facilitate the traffic stop without violatingMcCarty).
 {¶ 27} Here, it was explained that the traffic stop occurred while the trooper was on the midnight shift on December 31. Thus, the hour was late, and considering this took place in Northeastern Ohio, it was at least somewhat cold. We do not have specific testimony on whether appellee was in the front or back seat. However, for at least two reasons, it seems clear that he was in the front seat. First, the trooper testified that he noticed the moderate smell of alcohol coming from appellee's breath after entering the patrol car. Second, the HGN test was performed in the car, and one cannot assume that the officer sat backwards in the front seat looking through a wire cage in order to administer the gaze testing which he stated was performed with his pen approximately twelve inches from appellee's eyes.
 {¶ 28} Still, location in the front seat is merely one consideration. It is not determinative. See State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255. In the Farris case, the defendant was stopped for speeding. The officer smelled marijuana, and thus, he decided to search the defendant's vehicle. In order to perform the vehicle search, the officer had the defendant exit the vehicle, confiscated his keys, patted him down, placed him in the front seat of the cruiser, disclosed that he smelled marijuana in the vehicle and advised that he was going to conduct a vehicle search for marijuana. Id. at ¶ 2-3, 14. The officer then asked if the defendant had any drugs or *Page 10 
drug devices in the vehicle to which the defendant responded by admitting he had a "bowl" in the trunk. Id. at ¶ 3.
 {¶ 29} The Court found the search of the passenger compartment of the vehicle permissible due to the smell of burnt marijuana. Id. at ¶ 12. But, the Court ruled the paraphernalia found in the trunk should have been suppressed because a trunk cannot be searched based upon a smell in the passenger compartment and because the defendant's admission to having paraphernalia in the trunk was made during a custodial interrogation prior to the required Miranda warnings. Id. at 13-15. In so holding, the Court noted that the extended detention in the cruiser was not based upon the purpose of the original stop, excessive speed, but upon the smell of marijuana. Id. at ¶ 12.
 {¶ 30} The Court pointed out how the state conceded in the lower courts that the defendant was in custody but now claimed that he was not in custody for purposes of Miranda. Id. at ¶ 13. Keeping in line with past precedent, the Court explained that one need not be formally under arrest to be in custody for purposes of Miranda. Id. "Although a motorist who is temporarily detained as the subject of an ordinary traffic stop is not 'in custody' for the purposes of Miranda, * * * if that person 'thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda'." Id., citing McCarty.
 {¶ 31} The Court found that the officer's treatment of the defendant after the original traffic stop placed him in custody for practical purposes. Id. at ¶ 14. The Court noted that the defendant was not free to leave the scene as he had no car keys and he reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile. Id. at ¶ 14. The Court concluded that a reasonable man in the defendant's position would have believed that he was in police custody as he sat in the police cruiser under the facts of that case. Id. at ¶ 14.
 {¶ 32} There are various notable distinctions between Farris and the case at bar. First, there is no indication that appellee was patted down before entering the cruiser. Second, the officer did not confiscate appellee's keys. Third, the officer did not indicate or even imply that appellee had to remain in the cruiser while the officer *Page 11 
conducted a full search of appellee's vehicle. Fourth, there was no extended detention.
 {¶ 33} Fifth, appellee's entry into the cruiser was based upon the original stop. That is, when appellee was asked to sit in the police cruiser, it was clear that the officer was investigating and processing the speeding violation. We note that the officer's subjective intent is irrelevant. State v. Springer (1999), 135 Ohio App.3d 767, 773 (where this court held that the subjective intent of the officer and the subjective belief of the suspect are irrelevant in determining whether one is "in custody" or otherwise significantly deprived of his freedom, for purposes of Miranda).
 {¶ 34} We also note that in Farris, the officer was clearly and expressly investigating a new offense when he placed the defendant in the cruiser. See id. at ¶ 12. On the contrary, the officer here did not "thereafter" subject appellee to custodial treatment outside the temporary detention for the traffic stop. See id. at ¶ 13. A rational person stopped for speeding would anticipate all occurrences here as being commensurate with receiving a speeding ticket where that person failed to possess his driver's license, registration and proof of insurance.
 {¶ 35} Contrary to appellee's contention, this did not become more than an ordinary traffic stop at the point of entry into the cruiser. At the point the officer asked appellee to enter his vehicle, the traffic stop for speeding was not yet complete. Once again, the inability to immediately complete the stop was due to appellee's failure to carry a driver's license, vehicle registration documents or proof of insurance. As a result of appellee's failure, the officer needed to obtain various items of personal information from appellee to run him through the system and to be assured the information obtained was actually that pertaining to appellee.
 {¶ 36} Notably, when a person is without official documentation, they can say they are anyone whose social security number they know. The officer needs simultaneous access to his database to quiz the motorist about various obvious or even obscure aspects of the motorist's background to ensure truthfulness. As the trooper testified, he neededto compare the BMV picture of appellee on his cruiser's computer screenwith appellee himself. Retreat to the cruiser was thus made *Page 12 
necessary and reasonable by appellee's own neglect. These facts make retiring to the cruiser much less custodial than any situation cited by appellee.
 {¶ 37} To sum up all the facts here, appellee was stopped late at night on New Year's Eve. He was initially stopped for speeding, not to investigate suspicions of drunk driving. He failed to produce the three required documents essential for every traffic stop requiring more extensive investigation prior to writing the ticket. At the point of requesting appellee to enter the patrol car, the officer had not asked appellee to perform any field sobriety tests and did not otherwise indicate that he was under suspicion of some offense other than speeding. Appellee had not been handcuffed. He was not patted down. His car was not searched, nor were statements made about an impending search. His keys were not confiscated. He was placed in the front seat. There was only one officer on the scene. There was no lengthy detention as the processing within the police car entailed only a matter of minutes. Custody is situation-based, and this situation is wholly distinguishable from the situation that existed in the Ohio Supreme Court's Farris case.
 {¶ 38} To a reasonable person, the traffic stop for speeding was merely being relocated to the officer's vehicle where appellee's identity and the car's ownership could be established through dispatch and photographic comparisons. This relocation did not elevate the traffic stop to the level of a formal arrest, nor was it the functional equivalent of an arrest.
 CONCLUSION {¶ 39} In conclusion, the trial court erroneously found that custody for purposes of Miranda began when the officer first noticed a smell of alcohol coming from appellee's vehicle. Moreover, the trial court erroneously relied on Stefanick for the proposition that the mere act of questioning a motorist after activating overhead police lights or the act of asking the motorist to alight for sobriety testing is a custodial interrogation. In adopting Stefanick, the trial court failed to recognize later decisions out of this district and the United States Supreme Court's McCarty decision, specifically holding that asking a motorist if they had been drinking after a traffic stop does not violate rights against self-incrimination as investigation conducted during a *Page 13 
short traffic detention is not a custodial situation for purposes ofMiranda. As such, the trial court's decision was based upon incorrect law.
 {¶ 40} In applying the correct law to the unique facts of this case and using the trial court's own finding that the trooper's testimony was credible, we conclude that appellee's rights against self-incrimination were not violated as he was not experiencing the functional equivalent of an arrest when he was asked how much he had to drink. Accordingly, the judgment of the trial court suppressing appellee's statement on the amount of alcohol consumed is hereby reversed.
DeGenaro, P.J., concurs.
Donofrio, J., dissents; see dissenting opinion.