OPINION *Page 2 
{¶ 1} Appellant Thomas Crowe, Jr. entered a no contest plea to driving under the influence of alcohol, R.C. 4511.19(B)(3), after the Delaware County Municipal Court overruled his motion to suppress. The court found him guilty, imposed sentence, and stayed the sentence pending appeal.
 {¶ 2} The following facts were gleaned from the hearing on appellant's motion to suppress. On October 8, 2006 at approximately 2:00 a.m., Trooper Kasey Jones of the Ohio State Highway Patrol was driving northbound on US Route 23. Trooper Jones observed a vehicle, later found to be operated by the appellant, traveling at an excessive speed. She paced the vehicle at 72 in a 55 zone and confirmed the speed using radar. The vehicle was drifting within its lane and touched the right lane line on two occasions and the left lane line on one occasion. During the examination of Trooper Jones, the videotape of the stop was admitted into evidence.
 {¶ 3} Based on this information the trooper conducted a traffic stop. She approached the appellant's vehicle. There were two passengers in the vehicle. The trooper detected an odor of alcohol coming from inside the vehicle. She noticed appellant's eyes were glassy and bloodshot.
 {¶ 4} At the trooper's request, the appellant got out of his vehicle and was seated in the front seat of the patrol cruiser. Upon questioning, appellant initially denied consuming alcohol. Trooper Jones administered the horizontal gaze nystagmus (HGN) test. Appellant exhibited two clues. Trooper Jones failed to complete the test because appellant began talking at the end of the test.
 {¶ 5} Trooper Jones then informed appellant that she wanted him to submit to a preliminary breath test (PBT). She told him that she smelled alcohol on his breath and *Page 3 
believed that he had been drinking. At this point, he admitted that he had a beer about an hour and half ago. She noted that appellant seemed extremely nervous, spoke quickly and had a shaky voice. He stated he did not have his identification and had borrowed his girlfriend's car to take her friends home from a party. Trooper Jones administered the PBT and he registered a .039. Upon further questioning, appellant stated he had two or three beers earlier in the evening.
 {¶ 6} Trooper Jones placed appellant under arrest for operating a vehicle while under the influence of alcohol (OVI). Appellant was taken out of the cruiser, handcuffed and placed in the back seat. She stated to appellant that he was twenty years old and shouldn't have been drinking. Trooper Jones transported appellant to the patrol post. Trooper Jones and appellant had an extended conversation between the point of arrest and arrival at the post. Appellant again admitted to consuming alcohol but denied the existence of a beer bottle under the driver's seat as subsequently observed by the trooper. Appellant was courteous and cooperative with the trooper at during the stop.
 {¶ 7} Appellant was not given Miranda warnings until he arrived at the post. Trooper Jones read the BMV 2255 and administered a breath test on the BAC Data Master (BAC). Appellant tested .041 grams of alcohol per 210 liters of breath. Trooper Jones charged appellant with violations of R.C. 4511.19(A)(1), OVI, and R.C. 4511.19(B)(3), OVAUC, and R.C.4511.21(D)(1), speed.
 {¶ 8} Appellant pled not guilty and filed a motion to suppress. Appellant argued his arrest was without probable cause; and that his statements made prior to being advised of his Miranda rights should be suppressed. Appellant also moved to suppress the results of the PBT, HGNT, and BAC. The trial court granted the motion regarding post-arrest statements and the results of the HGN test, but overruled the motion as to *Page 4 
the remaining evidence. Appellant entered a plea of no contest to the charge of R.C. 4511.19(B)(3), OVUAC.
 {¶ 9} Appellant raises two Assignments of Error:
 {¶ 10} "I. THE COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS BASED UPON A LACK OF PROBABLE CAUSE TO ARREST THEREBY VIOLATING APPELLANT'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 11} "II. THE TRIAL COURT ERRED BY CONSIDERING THE RESULT OF A "PBT" TEST FOR PROBABLE CAUSE PURPOSES WITHOUT ANY FOUNDATIONAL EVIDENCE REGARDING THE MAKE, MODEL OR TYPE OF "PBT" DEVICE USED AND WHETHER IT WAS NHTSA APPROVED FOR PRELIMINARY BREATH TESTING AND WAS OPERATED AND FUNCTIONED PROPERLY."
 I. {¶ 12} In his first assignment of error, appellant argues the trial court erred in denying his motion to suppress on several grounds.
 {¶ 13} First, we note there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141, State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can *Page 5 
reverse the trial court for committing an error of law. See: State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172, State v. C/ayfor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726.
 {¶ 14} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594, citations omitted. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citation omitted.
 {¶ 15} Appellant first argues that the trial court's findings of fact were against the manifest weight of the evidence. He specifically argues the trial court erred in finding "the defendant was exceeding the speed limit and swerving outside his lane of travel." See, January 17, 2007 Judgment Entry.
 {¶ 16} An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be *Page 6 
viewed in light of the totality of circumstances surrounding the stop.State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert, denied (1988), 488 U.S. 910, 109 S.Ct. 264.
 {¶ 17} At the suppression hearing, Trooper Jones testified she stopped appellant because "he was traveling at an excessive speed limit over 55 miles an hour." T. at 45. This Court, in State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, 2001 WL 111891, held that any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. "[T]he severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36,2000 WL 1615 at 3. Rather, `* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *"' Id. at 3, citing Dayton v. Erickson (1996)76 Ohio St.3d, 665 N.E.2d1091.
 {¶ 18} Based on the foregoing, we find that Trooper Jones had a reasonable, articulable reason to stop appellant based on a speeding violation, the testimony of which was uncontested at the suppression hearing.
 {¶ 19} Trooper Jones further testified that she "noticed at one point that Mr. Crowe was swerving in his lane he was traveling in the right hand lane." T. at 45. Appellant's counsel clarified this further on cross examination.
 {¶ 20} Counsel: "Describe what you mean by swerve."
 {¶ 21} Jones: "You can see on the tape as he's traveling in the right hand lane he actually he even touches the white fog line once or twice and just drifts over touches the line and then get's[sic] back over into the lane where he's driving down the middle of it." *Page 7 
 {¶ 22} Counsel: "So by swerve you mean drift?"
 {¶ 23} Jones: "Yes."
 {¶ 24} Counsel: "Your[sic] saying that that's visible on the tape?"
 {¶ 25} Jones: "Yes."
 {¶ 26} Counsel: "And yourfsic] not saying he committed a marked lane violation?"
 {¶ 27} Jones: "No he did not." T. at 56-57.
 {¶ 28} While it is true the trial court characterizes this as "swerving" as opposed to "drifting" in its decision, Trooper Jones described appellant's actions as both swerving and drifting, and the videotape supports her testimony. Appellant was not charged with a marked lane violation. The information merely adds to Trooper Jones' impressions that evening as reasonable suspicion already existed to stop appellant for speeding. The trial court's findings were supported by competent and credible evidence.
 {¶ 29} Next, appellant argues the trial court applied the wrong law to appellant's pre-Miranda statements. He asserts the trial court should have suppressed "all of the in cruiser statements and the physical evidence derived from those statements".
 {¶ 30} A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In interpreting this right, it has been held that the state may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege of against self-incrimination. Miranda v.Arizona (1966), 384 U.S. 436. The well-known Miranda warnings were thus created. Id.
 {¶ 31} Over the years, the U.S. Supreme Court and the Ohio Supreme Court has developed case law pertaining to Miranda warnings in the context of roadside traffic *Page 8 
stops. In Berkemer v. McCarty (1984), 468 U.S. 420, the U.S. Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop did not constitute `custodial interrogation" for purposes of the Miranda rule, so that pre-arrest statements motorist made in answer to such questioning were admissible against the motorist. If that person "thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440.
 {¶ 32} Recently, the Ohio Supreme Court decided State v. Farris,109 Ohio St.3d 519, 2006-Ohio-3255 and applied Berkemer in finding the driver was "subjected to treatment" that rendered him in custody and entitled to Miranda warnings.
 {¶ 33} In Farris, after stopping a driver for speeding, a police officer noticed the odor of burnt marijuana coming from inside the car. The officer asked the driver to step out of the car, patted the driver down, and placed him in the front seat of the patrol car. Without providing Miranda warnings, the officer asked the driver about the smell of marijuana and told him he was going to search the car. At that point, the driver admitted that a marijuana pipe was in a bag in the trunk.
 {¶ 34} The Ohio Supreme Court held "the officer's treatment of Farris after the original stop placed Farris in custody for practical purposes". Id. at ¶ 14. The Court, quoting Berkemer, held the only relevant inquiry in determining whether a person is in custody is "how a reasonable [person] in the suspect's position would have understood [their] situation." Id. The Court found that a reasonable person in Farris's position would have understood himself to be in custody of a police officer, because (1) the officer patted down Farris; (2) took his car keys; (3) instructed him to enter the cruiser; and (4) he told Farris that he was going to search Farris's car because of the scent of *Page 9 
marijuana. Id. The Court held that the driver's pre-warning and post-warning statements were inadmissible.
 {¶ 35} Comparing Farris to this case, we find Farris to be distinguishable as the appellant was not "subjected to treatment" which a reasonable person would have understood to be in police custody. The record does not demonstrate that Appellant was patted-down before being placed in the cruiser, he was not handcuffed, and his keys were not taken away, nor was he subjected to a lengthy detention or told his vehicle was going to be searched prior to arrest.
 {¶ 36} Appellant's placement in the front seat of the cruiser under the circumstances herein was not the functional equivalent of an arrest. Since Miranda and Berkemer, the Ohio Supreme Court and other appellate courts have recognized that it is constitutionally permissible for a police officer to ask a driver to sit in his or her car to facilitate a traffic stop. State v. Lozada, 92 Ohio St.3d 74, 76, 2001-Ohio-149;State v. Evans, 67 Ohio St.3d 405, 407, 1993-Ohio-186; State v.Leonard, First Dist. App. No. C-060595, 2007-Ohio-3312; State v.Coleman, Seventh Dist. App. No. 06 MA 41, 2007-Ohio-1573; State v.Carlson (1995) 102 Ohio App.3d 585, 657 N.E.2d 591.
 {¶ 37} In light of the above, the trial court correctly appliedBerkemer to the facts of this case in overruling appellant's motion to suppress as to his pre-arrest statements.
 {¶ 38} Appellant finally contends that the trial court incorrectly decided the ultimate issue. We have previously recited that a police officer does not have to observe poor driving performance in order to affect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See, e.g., State v. Harrop (July 2, 2001), Muskingum App. No. *Page 10 
CT2000-0026, 2001 WL 815538, citing Atwell v. State (1973),35 Ohio App.2d 221, 301 N.E.2d709.
 {¶ 39} An officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense.State v. Heston (1972), 29 Ohio St.2d 152, 280 N.E.2d 376, cert,denied, 409 U.S. 1038, 93 S.Ct. 534, 34 L.Ed.2d 486.
 {¶ 40} Upon our review of the record, we find that Trooper Jones had probable cause to arrest appellant for driving under the influence of alcohol. Trooper Jones stopped appellant for speeding. She witnessed appellant drift between the lines. T. at 56-57. She detected the odor of alcohol on appellant. T. at 46, 47. She further noted that his eyes were bloodshot and glassy. T. at 47, 58.
 {¶ 41} Based on the foregoing, we find Trooper Jones had probable cause to arrest appellant for OVI.
 {¶ 42} Appellant's first assignment of error is overruled.
 II. {¶ 43} In his second assignment of error, appellant argues that the trial court should have taken foundational evidence regarding the preliminary breath test (hereinafter "PBT").
 {¶ 44} The trial court stated: "There was sufficient probable cause without the consideration of the .039 reading of the PBT." January 17, 2007 Judgment Entry. The trial court further stated: "The court can and does consider the results of the PBT for probable cause purposes." Id.
 {¶ 45} Upon review, we find that the totality of Trooper Jones observations, even without considering the PBT results, sufficiently establish probable cause for the arrest. *Page 11 
 {¶ 46} Because we find probable cause without considering the PBT results, we find that appellant's second assignment of error is not well-taken.
 {¶ 47} Appellant's second assignment of error is overruled.
 {¶ 48} The judgment of the Delaware County Municipal Court is affirmed.
 By: Delaney, J. Hoffman, P.J. and Wise, J. concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Municipal Court is affirmed. Costs assessed to appellant. *Page 1