[Cite as *Zanesville v. Reaver*, 2017-Ohio-4149.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| CITY OF ZANESVILLE | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2016-0054 |
| ZACHARY REAVER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:  Criminal appeal from the Zanesville
                Municipal Court, Case No. 15TRC03199A


JUDGMENT:         Affirmed


DATE OF JUDGMENT ENTRY:   June 5, 2017


APPEARANCES:

For Plaintiff-Appellee
DAVID TARBERT
EMILY STRANG TARBERT
SCOTT D. EICKELBERGER
401 MARKET STREET, STE. 209
ZANESVILLE, OH 43701

For Defendant-Appellant
BRIAN BENBOW
605 MARKET ST.
ZANESVILLE, OH 43701

*Gwin, P.J.*

{¶1}    Defendant-appellant Zachary Reaver ["Reaver"] appeals his conviction and sentence in the Zanesville Municipal Court on one count of OVI "prohibited level" in violation of R.C. 4511.19(A)(1)(d).  Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2}    At around 3:00 a.m. on December 24, 2015 Sergeant Jeffrey Jirles of the Ohio State Highway Patrol believed Reaver was speeding and began pacing Reaver's car. Sergeant Jirles noting speeds of up to 45 mph in a 35-mph zone.  While he was following Reaver, Sergeant Jirles observed Reaver failing to stop properly at a red light and an improperly turning at that same light.  Based on these violations, Sergeant Jirles initiated a traffic stop.

{¶3}    Reaver "fumbled" around his vehicle trying to find his license and registration. During this initial encounter, Sergeant Jirles noted there was a strong odor of alcohol coming from Reaver's vehicle.  There was a passenger in the vehicle, so Reaver was removed from his car and placed in the front seat of Sergeant Jirles' cruiser.  While in the cruiser, Reaver admitted to coming from several bars and consuming "three beers" and then later admitting to "four drinks."  Sergeant Jirles noted the odor of alcohol intensified when he was alone with Reaver in his cruiser.

{¶4}    Sergeant Jirles administered the standardized field sobriety tests ["SFST's"], including the horizontal gaze nystagmus test ["HGN"], the "walk and turn divided attention skills test" ["WAT"]," and the "one-leg stand" ["OLS"].

{¶5} Reaver exhibited four out of four clues on the OLS, indicating a failure on the test. Sergeant Jirles provided instructions regarding the WAT, demonstrated the test, and administered it to Reaver. Sergeant Jirles noted three clues on Reaver's WAT test.

{¶6} Reaver's was arrested and charged with one count of OVI "under the influence" a violation of R.C. 4511.19(A)(1)(a) and one count of OVI "prohibited level" in violation of R.C. 4511.19(A)(1)(d).

{¶7} Reaver filed a Motion to Suppress. The court held a hearing on May 5, 2016. At this hearing, the court heard the testimony of Sergeant Jirles and Reaver's OVI expert, Harold Copen ("Copen"). The court overruled Reaver's motion noting in part,

Based upon the evidence presented, the court finds that the officer had a valid reason to conduct a traffic stop and that he further had reasonable, articulable suspicion to suspect the defendant may have been operating a motor vehicle while under the influence and to request that the defendant submit to field sobriety tests.

The court further finds that the HGN test was not conducted within substantial compliance of NHTSA standards, and the results thereof are not admissible.

The court finds that the "one legged stand" and the "walk and turn" tests were conducted within substantial compliance of the NHTSA standards and are therefore admissible.

The court further finds that the statements made by the defendant admitting to the consumption of alcohol prior to the traffic stop are admissible even though he was not given the *Miranda* warnings since they

were made prior to the defendant being placed under arrest or placed into custody.

{¶8}   Reaver pled "no contest" to one count of OVI "prohibited level" in violation of R.C. 4511.19(A)(1)(d) and was found guilty on September 26, 2016.

*Assignments of Error*

{¶9}   Reaver raises three assignments of error,

{¶10}   "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BY FINDING THAT THE ARRESTING OFFICER ADMINISTERED THE FIELD SOBRIETY TESTS IN SUBSTANTIAL COMPLIANCE WITH THE TESTING GUIDELINES SET FORTH BY THE NATIONAL HIGHWAY TRANSPORTATION AND SAFETY ADMINISTRATION.

{¶11}   "II. THE TRIAL COURT ERRED IN FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO PLACE APPELLANT UNDER ARREST FOLLOWING THE ADMINISTRATION OF THE FIELD SOBRIETY TESTS BASED ON THE TOTALITY OF THE CIRCUMSTANCES.

{¶12}   "III. THE TRIAL COURT ERRED IN FINDING THAT THE STATEMENTS MADE BY APPELLANT WERE ADMISSIBLE FOR PURPOSES OF DETERMINING PROBABLE CAUSE."

I. & II.

*Standard of Review.*

{¶13}   Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When ruling on a motion to suppress, the trial court assumes the role of trier of

fact and is in the best position to resolve questions of fact and to evaluate witness credibility.  See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings.  See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996).  However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard.  See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra.  Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas*, supra at 698, 116 S.Ct. at 1663.

*The Traffic Stop*

{¶14} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23.  Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist.  *Whren v. United States*, 517 U.S.

806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996); *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

{¶15} In the case at bar, the record establishes Reaver's failing to stop properly at a red light and an improperly turning at that same light. The judge is in the best position to determine the credibility of witnesses, and his conclusion in this case is supported by competent facts. See *State v. Burnside,* 100 Ohio St.3d 152, 154-55, 797 N.E.2d 71, 74(2003). The fundamental rule that weight of evidence and credibility of witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584(1982). The trooper's testimony represents competent, credible evidence that Reaver's had committed traffic violations. Therefore, the factual finding of the trial court is not clearly erroneous.

{¶16} We accept the trial court's conclusion that Reaver's violation of the traffic laws gave Sergeant Jirles reasonable suspicion to stop Reaver's vehicle because the factual findings made by the trial court are supported by competent and credible evidence. Thus, the trial court did not err when it denied Reaver's motion to suppress on the basis that the initial stop of his vehicle was valid. *State v. Busse*, 5th Dist. No. 06 CA 65, 2006-Ohio-7047, ¶ 20.

*The SFST's and Probable Cause to Arrest*

{¶17} Reaver's argues that the trial court erred in admitting the results of the OLS and WAT field sobriety tests because they were not conducted in substantial compliance with the NHTSA guidelines. He further contends that the trooper lacked sufficient probable cause to arrest him for OVI.

**{¶18}** While field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952(2000), *superseded by statute on other grounds as stated in State v. Boczar*, 113 Ohio St.3d 148, 863 N.E.2d 155, 2007–Ohio–1251. In *Homan,* the facts which supported a finding of probable cause were: red and glassy eyes, breath which smelled of alcohol, erratic driving and an admission that the suspect had consumed alcohol.

**{¶19}** The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 291 N.E.2d 742(1972); *Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333(12th Dist. 1985); *State v. Bernard*, 20 Ohio App.3d 375, 376, 485 N.E.2d 783(9th Dist. 1985); *Westlake v. Vilfroy*, 11 Ohio App.3d 26, 27, 462 N.E.2d 1241(8th Dist. 1983); *State v. Judy,* 5th Dist. No. 2007-CAC-120069, 2008-Ohio-4520, ¶27.

**{¶20}** Further, the Ohio Supreme Court has made clear that the officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of substantial compliance. *State v. Schmitt*, 101 Ohio

St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, (2004), ¶15. This distinction has been defined as follows,

The "results" of an HGN test include an officer's opinion about whether a person "passed" or "failed" the test, the number of clues a person demonstrated on an HGN test, and, based upon the number of clues demonstrated during the HGN test, the statistical likelihood the person was under the influence of alcohol and had a BAC level over the legal limit. *Bresson* [51 Ohio St.3d 123] at 126-29; *Kennedy* [5th Dist. No. 2008 AP 04 0026, 2009-Ohio-1398] at ¶ 27. In contrast, an officer's observation that a defendant was unable to focus steadily on the stimulus during the HGN test or swayed during a field sobriety test is the type of physiological factor about which an officer may testify even if the test was not administered in substantial compliance with the testing standards. *Wickliffe v. Kirara*, 11th Dist. No. 2006-L-172, 2007-Ohio-2304, ¶ 19; *State v. Koteff*, 5th Dist. No. 04-COA-035, 2005-Ohio-1719, ¶ 5, 18. Thus, an officer's observation that the defendant could not hold himself steady, lost his balance, stumbled or staggered when he walked, stepped off the line, could not follow simple directions, or used his arms for balance, is admissible as lay evidence of intoxication even if the final results of the field sobriety tests are inadmissible at trial due to a lack of substantial compliance with accepted testing standards. *Schmitt* [101 Ohio St.3d 29, 2004-Ohio-37, 801 N.E.2d 446] at syllabus; *State v. Johnson*, 7th Dist. No. 05 CO 67, 2007-Ohio-602, ¶ 25; *State v. Green*, 8th Dist. No. 88234, 2007-Ohio-1713, ¶ 53; *Cleveland v.*

*Hunter,* 8th Dist. No. 91110, 2009-Ohio-1239, ¶ 62-63; *State v. Lothes*, 11th Dist. No. 2006-P-0086, 2007-Ohio-4226, ¶ 59; *State v. Hammons*, 12th Dist. No. CA2004-01-008, 2005-Ohio-1409, ¶ 5. Admission of such evidence regarding the HGN test is no different from other nonscientific field sobriety tests. *Boczar* [113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155] at ¶ 25-27.

Here, because Officer Kirby did not conduct the HGN test in substantial compliance with accepted testing standards, the trial court properly suppressed evidence regarding the results of the HGN test and evidence regarding the technical or scientific basis for the test. Nonetheless, because an officer's observations are admissible as lay testimony to help the fact finder determine whether defendant was driving while intoxicated, *Schmitt* at ¶ 14, the trial court also properly ruled testimony to be admissible at trial concerning Officer Kirby's observations of defendant during the HGN test, including whether defendant swayed, had trouble staying focused, failed to follow instructions, or was uncooperative. *Schmitt; Boczar; Wickliffe; Koteff; Johnson.*

*Columbus v. Bickis,* 10th Dist. Franklin No. 09AP-898, 2010-Ohio-3208, ¶ 16-17.

{¶21} In the case at bar, the probable cause to arrest Reaver for OVI was supported by the trooper's observation of glassy eyes, odor of alcohol, slurred speech, admission that he had been drinking, and traffic violations. Further, Sergeant Jirles' observations that Reaver stopped while walking to steady himself did not touch heel-to-toe, turned incorrectly on the WAT test, and seemed unsteady on his feet during the OLS

were admissible for purposes of establishing whether the officer had probable cause to arrest Reaver for OVI.

**{¶22}** Accordingly, the totality of the evidence, even excluding the OLS and WAT tests, gave rise to probable cause to arrest for OVI. *Homan* at 427, 732 N.E.2d 952. As such, we find it was not error for the trial court to determine there was probable cause to support Reaver's arrest for OVI.

**{¶23}** We further note that Reaver entered a plea to a "per se" violation under R.C. 4511.19(A)(1)(d). In prosecutions for "under the influence" pursuant to R.C. 4511.19 (A)(1)(a), "the behavior of the defendant * * * is the crucial issue. However, in *State v. Lucas*, the Supreme Court observed,

> The *per se* offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others." *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR 1, 5, 472 N.E.2d 689, 693. In determining whether one of these *per se* offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue at trial is the accuracy of the test, not the behavior of the accused. See Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W.Res.L.Rev. 239, 243.

40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988).  Reaver has not challenged the accuracy of the BAC test in this appeal.  The FST's are not determinative to a finding of whether 1).  Reaver was operating a vehicle within this state and  2).  Whether at the time he had a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath.  In other word, the SFST's are not necessary to the determination of guilt or innocence for a "per se "offense.

**{¶24}**  Further, we cannot help but observe Reaver's BAC registered as a 0.116.  It would appear to this Court then that Sergeant Jirles' performance of the WAT and OLS in the case at bar accurately predicted that Reaver's BAC would be above 0.08, which is the legal limit in Ohio.  Thus, any deviations in Sergeant Jirles' administration of the WAT and OLS tests to Reaver were de minimis.  Therefore, Sergeant Jirles had probable cause to arrest Reaver for OVI.

**{¶25}** There is a split of authority among appellate districts regarding the admissibility of portable breath tests, "even for probable cause purposes."  *State v. Derov*, 176 Ohio App.3d 43, 889 N.E.2d 1057, 2008-Ohio-1672, ¶10.  The Ohio Supreme Court accepted *Derov* for review as a certified conflict with *State v. Gunther*, No. 04CA25, 2005-Ohio-3492, on the following issue: "Whether the results of a portable breath test are admissible to establish probable cause to arrest a suspect for a drunk driving offense." *State v. Derov*, 118 Ohio St.3d 1503, 2008-Ohio-5467.  Ultimately, the Supreme Court reversed *Derov* on other grounds and dismissed all pending issues relative to portable breath tests*.  State v. Derov,* 121 Ohio St.3d 269, 903 N.E.2d 636, 2009-Ohio-1111, at ¶ ¶ 1-3.

{¶26} The trial court made no mention of the PBT in overruling Reaver's motion to suppress. As we have explained, sufficient evidence existed for the officer to arrest Reaver and charge him with OVI even if the PBT is excluded.

{¶27} Accordingly, Reaver's first and second assignments of error are overruled.

III.

{¶28} In his third assignment of error, Reaver contends the trial erred by not suppressing all alleged admissions to drinking, as such admissions were made while Reaver was in custody and without the benefit of a *Miranda* warning.

{¶29} Traffic stops such as the one at issue here do not rise to the level of "formal arrest." Thus, generally in the course of an ordinary traffic stop, *Miranda* rights are not implicated because custodial interrogation does not occur.

{¶30} In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" under the rule announced in *Miranda,* supra. However, once a traffic stop evolves beyond the "ordinary," questioning may rise to the level of custodial interrogation under certain circumstances.

{¶31} In *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), the Supreme Court held that an ordinary traffic stop during which the police officer asked the driver a modest number of questions at a location visible to passing motorists did not involve custody for purposes of *Miranda.* The Court noted its holding in *Berkemer* applied only to ordinary traffic stops, but observed a motorist "might properly" be found to have been placed "in custody" for purposes of *Miranda* safeguards where he was detained for over one-half hour and subjected to questioning while in a patrol car. *Bruder,* supra, at

11, f.n. 2. *Accord*, *State v. Mullins*, 5th Dist. Licking No. 2006–CA–00019, 2006-Ohio-4674.[1]

**{¶32}** A number of Ohio courts have held that a police officer can also order a traffic misdemeanant to remain in the police cruiser for the length of his detention. *See State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist. 1995*); State v. Warrell*, 41 Ohio App.3d 286, 287, 534 N.E.2d 1237 (9th Dist. 1987); *State v. Block*, 8th Dist. Cuyahoga No. 67530, 1994 WL 706169(Dec. 15, 1994), *discretionary appeal denied*, 72 Ohio St.3d 1521(1995); *Middletown v. Downs* (March 19, 1990), 12th Dist. Butler App. No. CA89-06-094, 1990 WL 28686 (Mar. 19, 1990) at 3. Courts have reasoned that the latter order, like the order permitted under *Mimms,* is a modest incremental intrusion justified by the nature of the traffic stop itself. *See Carlson*, 102 Ohio App.3d at 595-96, 657 N.E.2d 591; *State v. Wineburg*, 2nd Dist. Clark No. 97 CA 58, 1998 WL 409021(Mar. 27, 1998).

**{¶33}** The Ohio Supreme Court has noted a suspect need not be under arrest to be "in custody" for *Miranda* purposes. *State v. Farris*, *109 Ohio St.3d 519, 2006–Ohio–3255, 849 N.E.2d 985, ¶ 13, citing Berkemer*, *supra*, 468 U.S. at 420*.* In *Farris*, after stopping a driver for speeding, a police officer noticed the odor of burnt marijuana coming from inside the car. The officer asked the driver to step out of the car, patted the driver down, and placed him in the front seat of the patrol car. Without providing *Miranda* warnings, the officer asked the driver about the smell of marijuana and told him he was

---

[1] We note that the Ohio Supreme Court has accepted the issue, ""[I]n the course of a traffic stop, d[o] the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution require a law enforcement officer to provide *Miranda* warnings to a suspect who is removed from his vehicle and placed in the front seat of a police vehicle for questioning?" *citing State v. Mullins*, 5th Dist. Licking No. 2006–CA–00019, 2006-Ohio-4674 as one of the conflict cases. *Cleveland v. Oles,* 145 Ohio St.3d 1455, 2016-Ohio-2807, 49 N.E.3d 319(Table)(May 4, 2016). Oral arguments were heard March 1, 2017.

going to search the car.  At that point, the driver admitted that a marijuana pipe was in a bag in the trunk.

**{¶34}**  The Ohio Supreme Court held "the officer's treatment of Farris after the original stop placed Farris in custody for practical purposes."  *Id.* at ¶ 14.  The Court, quoting *Berkemer,* held the only relevant inquiry in determining whether a person is in custody is "how a reasonable [person] in the suspect's position would have understood [their] situation."  *Id.*  The Court found that a reasonable person in Farris's position would have understood himself to be in custody of a police officer, because (1) the officer patted down Farris; (2) took his car keys; (3) instructed him to enter the cruiser; and (4) he told Farris that he was going to search Farris's car because of the scent of marijuana.  *Id.*  The Court held that the driver's pre-warning and post-warning statements were inadmissible.

**{¶35}**  Comparing *Farris* to this case, we find *Farris* to be distinguishable as Reaver was not "subjected to treatment" which a reasonable person would have understood to be in police custody.  The record does not demonstrate that Reaver was patted-down before being placed in the cruiser, he was not handcuffed, and his keys were not taken away, nor was he subjected to a lengthy detention or told his vehicle was going to be searched prior to arrest.  *State v. Crowe,* 5th Dist. Delaware No. 07CAC030015, 2008-Ohio-330.[2]

**{¶36}**  Reaver's placement in the front seat of the cruiser under the circumstances herein was not the functional equivalent of an arrest.  Since *Miranda* and *Berkemer*, the Ohio Supreme Court and other appellate courts have recognized that it is constitutionally permissible for a police officer to ask a driver to sit in his or her car to facilitate a traffic

---

[2] *Crowe* was also accepted as a conflict case by the Ohio Supreme Court, see n. 1, supra. *Cleveland v. Oles,* 145 Ohio St.3d 1455, 2016-Ohio-2807, 49 N.E.3d 319 (Table).

stop.   *State v. Lozada*, 92 Ohio St.3d 74, 76, 2001-Ohio-149; *State v. Evans,* 67 Ohio St.3d 405, 407, 1993-Ohio-186; *State v. Leonard*, First Dist. App. No. C-060595, 2007-Ohio-3312; *State v. Coleman*, Seventh Dist. App. No. 06 MA 41, 2007-Ohio-1573; State v. Carlson (1995) 102 Ohio App.3d 585, 657 N.E.2d 591.

**{¶37}**  In light of the above, the trial court correctly applied *Berkemer* to the facts of this case in overruling Reaver's motion to suppress as to his pre-arrest statements.

**{¶38}**  Reaver's third assignment of error is overruled.

**{¶39}**  The judgment of the Zanesville Municipal Court, Muskingum County, Ohio is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur